**UNITED STATES of America,
Appellant,**

v.

**Cheryl L. McPECK, a/k/a Cheri Bell
d/b/a Gold Studio, Appellee.**

**No. 89–5502.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 14, 1990.

Decided Aug. 6, 1990.

---

John A. Dudeck, Jr., Washington, D.C., for appellant.

Ian Traquair Ball, Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, HEANEY and TIMBERS,* Senior Circuit Judges.

* The HONORABLE WILLIAM H. TIMBERS, Senior Circuit Judge for the United States Court of Appeals for the Second Circuit, sitting by designation.

LAY, Chief Judge.

The United States of America appeals from an order of the district court [1] affirming the bankruptcy court's [2] award of compensatory damages, punitive damages, and attorneys' fees to Cheryl L. McPeck. The bankruptcy court assessed the award against the Internal Revenue Service (IRS) under 11 U.S.C. § 362(h) (1988) because of its willful violation of the automatic stay established by McPeck's chapter 13 bankruptcy petition. We remand with instructions.

## BACKGROUND

The facts underlying the bankruptcy court's finding that the IRS violated the automatic stay are set forth in detail in its opinion. *See In re McPeck*, Bky. No. 4–88–437, slip op. at 2–14 (Bankr.D.Minn. Oct. 12, 1988). A summary will suffice here.

McPeck owned a dance and exercise studio in Maple Grove, Minnesota, which she incorporated as "Gold Studio, Inc." sometime prior to 1988. McPeck became delinquent in paying various federal taxes, including personal income taxes, employee wage withholding taxes, federal unemployment (FUTA) taxes, and social security (FICA) taxes. The IRS made several collection attempts, none of which were successful. On February 4, 1988, McPeck filed a chapter 13 bankruptcy petition. She did not file a bankruptcy petition on behalf of Gold Studio, Inc. That same day, McPeck called the IRS to inform it of her petition. She also personally delivered a copy of the petition to the IRS along with a letter from her attorney advising the IRS that the automatic stay had gone into effect.

Despite this notice, the IRS continued its collection efforts without seeking relief from the stay. On February 16, 1988, McPeck met with a revenue officer to provide information about corporate assets.

---

1. The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

2. The Honorable Nancy C. Dreher, United States Bankruptcy Judge for the District of Minnesota.

The revenue officer asked McPeck about her personal financial situation and had her fill out a form entitled "Collection Information Statement for Individuals." This form asked McPeck about her personal assets and personal finances. On February 25, 1988, the IRS secured a court order authorizing it to seize the assets of Gold Studio, Inc. The IRS conducted the seizure the next day. Apparently using this seizure as a training exercise, the IRS secured police protection, hired a trucking company, and sent five revenue officers to seize the corporate property. The IRS gave McPeck an opportunity to segregate her personal property, and made an effort to seize only corporate property. Nonetheless, some of McPeck's personal items were mistakenly loaded onto the truck and hauled away to an auction house along with the corporate property.

The IRS eventually realized that the corporate assets had no value to the IRS because they were fully encumbered by liens. The IRS also learned that it had seized some of McPeck's personal assets. Nevertheless, the IRS advised McPeck that it would not release any of the assets until she agreed to pay freight and storage charges and signed a "receipt" absolving the IRS of all liability for damages caused by the seizure. McPeck refused to sign the "receipt," and the property thereafter remained in storage at the auction house.[3]

McPeck filed a motion under 11 U.S.C. § 362(h)[4] alleging that the IRS had willfully violated the automatic stay. The bankruptcy court found three separate violations: (1) taking the "Collection Information" statement, (2) seizing McPeck's personal property, and (3) requiring McPeck to sign the "receipt" releasing the IRS from liability as a condition for the return of her property. Finding the first and third violations to be willful,[5] the bankruptcy court awarded McPeck $1489.05 in actual damages, $2500 in punitive damages, and $2,825.25 in attorneys' fees.

The United States does not challenge the findings that the IRS willfully violated the stay. Nor does it assert that any of the damages or attorneys' fees are inappropriate.[6] The United States' sole argument is that Congress has not waived the IRS's immunity from money judgments in bankruptcy cases. McPeck counters that 11 U.S.C. § 106 (1988) provides the necessary waiver of sovereign immunity in this case.

DISCUSSION

There is no doubt that the IRS is bound by the automatic stay. Section 362(a) of the Bankruptcy Code imposes the stay on all "entities." Section 101(14) defines "entity" to include a "governmental unit." Section 101(26) defines "governmental unit" to include a "department, agency, or instrumentality of the United States." This does not end the inquiry, however. Nothing in § 362 serves as a waiver of the federal government's sovereign immunity from the damages and attorneys' fees authorized by § 362(h). *See Small Business Admin. v. Rinehart*, 887 F.2d 165, 169 (8th Cir.1989). For such a waiver, we must look to 11 U.S.C. § 106, which provides:

Waiver of sovereign immunity

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate

---

3. As of the hearing on the § 362(h) motion the IRS had still not released any of the property even though McPeck had made several requests to the IRS and to the Department of Justice for a return of her personal property. McPeck eventually regained her personal property by agreeing to a sale of the corporate assets and applying the proceeds toward freight and storage charges.

4. 11 U.S.C. § 362(h) provides:
    An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

5. The bankruptcy court found that the IRS's seizure of McPeck's personal property, although technically a violation, was not willful because the IRS attempted to seize only corporate property.

6. For example, the United States does not argue that these are not "appropriate circumstances" for an award of punitive damages. *See In re Ketelsen*, 880 F.2d 990 (8th Cir.1989).

and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

11 U.S.C. § 106 (1988).

We held in *Rinehart* that subsection (c) does not constitute a waiver of the federal government's immunity from monetary sanctions for violation of the automatic stay. 887 F.2d at 170 (relying on plurality opinion in *Hoffman v. Connecticut Dept. of Income Maintenance*, — U.S. ——, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989)). Recognizing this obstacle, McPeck asserts that subsection (a) is applicable. Subsection (a) authorizes monetary recovery from a governmental unit if (1) the governmental unit has a claim against the estate, (2) the debtor's claim against the governmental unit is property of the estate, and (3) the two claims arose from the same "transaction or occurrence."

The United States does not deny that the first two requirements of subsection (a) have been satisfied.[7] However, it argues that McPeck's claim for damages did not "arise from the same transaction or occur-

rence" as the IRS's claim upon the tax debt. This is a question that has resulted in a split of authority among the few bankruptcy courts that have addressed it. *Compare In re Price*, 103 B.R. 989, 995–96 (Bankr.N.D.Ill.1989) and *In re Lile*, 96 B.R. 81, 85 (Bankr.S.D.Tex.1989) *with In re Academy Answering Service, Inc.*, 100 B.R. 327, 330 (N.D.Ohio 1989).

We need not pass on this issue, however, because we think that the proper provision to be applied in this case is subsection (b). Subsection (b) does not require that the two claims "arise from the same transaction or occurrence." *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 317, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6274. Unlike subsection (a), however, subsection (b) limits the waiver of sovereign immunity to an offset of the governmental unit's claim against the estate. Both parties minimally address subsection (b) in their briefs, apparently because the bankruptcy court did not specifically authorize an offset in this case. We find, however, that offset was the proper procedure to follow in this case.

Section 106(b) states that any claim against a governmental unit that is property of the estate *"shall be offset"* against an allowed claim or interest of the governmental unit. This mandatory language comports with the established principle that an award to a plaintiff on a claim is ordinarily offset against an award to the defendant on a counterclaim; a single judgment is entered for the excess, if any. *See, e.g., In re Applied Logic Corp.*, 576 F.2d 952, 957–58 (2d Cir.1978)[8]; 80 C.J.S. *Set–Off &*

---

7. The IRS filed a proof of claim in the bankruptcy court in the amount of $19,329.40 for personal income, FICA, FUTA, and wage withholding taxes incurred by McPeck while operating her studio as a sole proprietorship. The IRS later amended its claim to include an additional $4,671.30 in wage withholding and FICA taxes.

In this chapter 13 case, McPeck's claim for damages became property of her bankruptcy estate since, under 11 U.S.C. § 1306(a)(1) (1988), it was "property * * * the debtor acquire[d] after the commencement of the case

but before the case [was] closed, dismissed, or converted."

8. The court in *In re Applied Logic* stated:
The rule allowing setoff, both before and after bankruptcy, is not one that courts are free to ignore when they think application would be "unjust." It is a rule that has been embodied in every bankruptcy act the nation has had, and creditors, particularly banks, have long acted in reliance upon it.
576 F.2d at 957–58 (footnote and citation omitted).

*Counterclaim* § 6, at 16 (1953). Thus, the tax claim established by the IRS must initially be offset by the counterclaim of the estate. A contrary rule would not only violate the language of § 106(b), but would contravene general principles of equity by requiring the governmental unit to pay the award to the debtor while being forced to attempt to recover its own claim through bankruptcy.

█ In our view, therefore, subsections (a) and (b) of § 106 must be read together. Section 106(a) is applicable only where the debtor's claim exceeds the claim of the governmental unit, and then, affirmative recovery is allowed only to the extent of such excess. Here, the IRS's claim for taxes far exceeds the total amount that McPeck was awarded on her § 362(h) motion. Thus, the proper procedure would have been to offset McPeck's recovery against the IRS's tax claim. To find a waiver of sovereign immunity for such an offset, we need only to look to § 106(b). Accordingly, we remand with instructions to offset McPeck's award against the IRS's tax claim.

█ In our view, § 106(b) requires that McPeck's entire award, including the award of attorneys' fees, be offset. When a statute awards attorneys' fees to a party, the award belongs to the party, not to the attorney representing the party. *See Evans v. Jeff D.*, 475 U.S. 717, 731–32, 106 S.Ct. 1531, 1539–40, 89 L.Ed.2d 747 (1986); *Smith v. South Side Loan Co.*, 567 F.2d 306, 307 (5th Cir.1978) (per curiam). Here, McPeck's entire § 362(h) claim, including her claim for attorneys' fees, became property of the estate by virtue of 11 U.S.C. § 1306 (and as required by § 106(b)). The Bankruptcy Code contains specific provi-

sions for the compensation of attorneys who prosecute claims on behalf of the estate. *See* 11 U.S.C. § 503(b) (1988). An attorney's claim under these provisions is given the highest priority. *See* 11 U.S.C. § 507(a) (1988). We recognize that collecting fees under these bankruptcy procedures may impose somewhat of a burden on McPeck's counsel. Nonetheless, we are dealing here with principles narrowly limiting recovery against a sovereign.

█ McPeck suggests, however, that a provision of the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(b) (1988),[9] authorizes an affirmative award of attorneys' fees against the IRS in this case. The United States counters that 28 U.S.C. § 2412(e) (1988) renders the EAJA inapplicable to this case because this case is one "to which section 7430 of the Internal Revenue Code of 1954 applies." *Id.* We agree with the IRS that I.R.C. § 7430 is applicable here because that section applies to "any administrative or court proceeding which is brought by or against the United States in connection with the determination, *collection,* or refund of any tax, interest, or penalty" under the Internal Revenue Code. I.R.C. § 7430(a) (1990) (emphasis added). As the United States argues, to receive attorneys' fees under I.R.C. § 7430

> [McPeck] would have to comply with the substantive and procedural requirements of Section 7430. For example, she would have to prove that the position of the United States was "not substantially justified," and that she "substantially prevailed" with respect to the amount in controversy or the most significant issue or set of issues presented, a burden she would not bear under Section 362(h).

Reply Brief for the Appellant at 18.

---

9. 28 U.S.C. § 2412(b) provides:

> Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United

States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

This issue was neither addressed by the bankruptcy court nor fully briefed by the parties. It appears from the bankruptcy court's order that it intended to award attorneys' fees solely under § 362(h). However, on remand the bankruptcy court may determine whether attorneys' fees can be awarded under the procedural standards set forth in I.R.C. § 7430. If so, the award of attorneys' fees should be assessed affirmatively against the IRS, and not as an offset against its tax claim.

The case is remanded to the district court with instructions to remand to the bankruptcy court for further proceedings in accordance with this opinion.