**Toni Lee DAVIS, Plaintiff/Appellee,**

v.

**INTERNAL REVENUE SERVICE, Defendant/Appellant.**

Civ. A. No. 91–129–N.

United States District Court, E.D. Virginia, Norfolk Division.

Jan. 29, 1992.

B. Cullen Gibson, Norfolk, Va., for plaintiff/appellee.

J. Phillip Krajewski, Asst. U.S. Atty., Norfolk, Va., Margaret M. Earnest, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant/appellant.

## OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

This matter comes before the court pursuant to 28 U.S.C. § 158(a) on appeal of the bankruptcy court's order of February 20, 1991. In its order of February 20, 1991, the bankruptcy court enjoined the Internal Revenue Service ("IRS") from proceeding against debtor Toni Lee Davis ("debtor") and ordered the IRS to pay debtor $475.00 in compensatory damages, $700.00 in attorney's fees, and $3,525.00 in punitive damages. 131 B.R. 50.

### I. Background Facts

Debtor filed a chapter 13 petition in bankruptcy on September 23, 1988, and listed the IRS as a creditor. The IRS filed two proofs of claim: one for $1,358.90 and the other for $998.95. *See* Debtor Master

Report by Frank J. Santoro, Standing Chapter 13 Trustee.[1]

On July 20, 1990, debtor commenced an adversary proceeding against the IRS by filing in bankruptcy court a two-count Complaint for Contempt and Damages ("complaint"). The basis for debtor's complaint was numerous alleged violations of the automatic stay of 11 U.S.C. § 362(a) by the IRS.[2] In Count I, debtor asked the bankruptcy court to hold the IRS in contempt; to direct the IRS to release its attachment of debtor's 1989 tax refund; and to punish the IRS for its contemptuous behavior by assessing a fine, compensatory damages in the amount of $475.00, attorney's fees, and punitive damages. In Count II, debtor asked the bankruptcy court to award, pursuant to 11 U.S.C. § 362(h), actual damages, including costs and attorney's fees, and punitive damages.

The parties stipulated that notwithstanding the IRS's knowledge of debtor's bankruptcy filing, the IRS violated the automatic stay of 11 U.S.C. § 362(a) on three occasions: 1) on August 3, 1989, the IRS filed against debtor a garnishment; 2) on or about March 28, 1990, the IRS filed against debtor a Notice of Federal Tax Lien Under Internal Revenue Laws; and 3) in May, 1990, the IRS attached debtor's 1989 tax refund. Stipulation of Facts (Nov. 28, 1990).

The matter was tried by the bankruptcy court on November 30, 1990. The IRS argued at trial that it enjoys sovereign immunity from money damages in this action and, alternatively, that even if the IRS is not entitled to sovereign immunity from money damages, the facts and circumstances of this case do not warrant the assessment of punitive damages. Transcript at 14–18 (Nov. 30, 1990) ("Tr.").

After hearing testimony and argument of counsel the bankruptcy court took a brief recess and then articulated its ruling from the bench. The bankruptcy court found "absolutely no merit" in the IRS's claim of sovereign immunity[3] and found the IRS to be "in contempt of court" for having violated the automatic stay of 11 U.S.C. § 362(a) "with reckless disregard." Tr. at 19, 21 (Nov. 30, 1990). Notwithstanding these findings the bankruptcy court imposed no money damages.[4] Instead, the bankruptcy court imposed the following sanctions:

One, the IRS is enjoined from proceeding against Ms. Davis in any way. I assume they would not do so, but I want that by order, that injunction.

Then the IRS is ordered through its proper officer that must be an IRS official and not an attorney, probably through the chief of the special procedures for the district, to issue a clean letter to Ms. Davis. By "clean letter" I mean that her tax problems are nonexistent, she's up to date, and include in that an apology.

Tr. at 22 (Nov. 30, 1990). Counsel for debtor then was instructed to prepare an order setting forth the bankruptcy court's decision.

Counsel could not agree on the terms of the order. In particular, counsel disagreed on the contents of the "clean letter" and requested the bankruptcy court to clarify

1. The IRS's claim for $998.95 was filed November 2, 1989, and represented the IRS's claim for taxes owing for the tax year 1988. Debtor objected to this claim on the following grounds: 1) the claimed taxes were not due the IRS at the time debtor filed her chapter 13 petition; 2) the amount claimed included interest and penalties accruing since debtor filed her chapter 13 petition; and 3) the filing of an administrative claim would allow the IRS to continue to add interest and penalties to the amount claimed making it impossible to pay this claim through debtor's chapter 13 plan. *See* Objection to Claim Number 10 and Notice Thereof at 1 (Dec. 30, 1989). A consent order ultimately was entered on March 19, 1990, settling the matter for $903.64.

2. The automatic stay of 11 U.S.C. § 362(a) is a fundamental protection afforded debtors by the bankruptcy laws.

3. According to the bankruptcy court, "[T]o say that the IRS is entitled to sovereign immunity ... would be to defame violations of [11 U.S.C. §] 362 altogether." Tr. at 20 (Nov. 30, 1990).

4. The bankruptcy court stated, "The Court is not disposed here to award damages of any kind and certainly not punitive damages as well." Tr. at 21 (Nov. 30, 1990).

its ruling. *See* Letter of B. Cullen Gibson (Dec. 12, 1990). By letter of December 17, 1990, the bankruptcy court clarified its ruling, stating, in part, that the "clean letter" was to include a statement that as of November 30, 1990, debtor was in good standing, i.e., that no further tax problems existed. The IRS objected to providing the "clean letter," as clarified. Specifically, the IRS objected to stating that debtor was a taxpayer in good standing and that no further tax problems existed, except to the extent that it related to the payment of debtor's outstanding tax liabilities under debtor's chapter 13 plan. Notice of Filing (Jan. 8, 1991).[5] As an alternative, the IRS submitted a proposed order.[6] Following its receipt of the IRS's objections and proposed order, the bankruptcy court noticed counsel that a hearing had been scheduled for reargument and redecision of this matter. Notice of Hearing (Jan. 14, 1991).

On January 29, 1991, the matter came before the bankruptcy court for reargument and redecision. Following a brief hearing,[7] during which the parties introduced no new evidence,[8] the bankruptcy court ruled anew. The sanctions imposed by the bankruptcy court's decision of January 29, 1991, sharply contrasted with those imposed by its decision of November 30, 1990. The bankruptcy court found that the IRS's "utterly reckless disregard" of the automatic stay of 11 U.S.C. § 362(a) constituted an "assault" and justified not only the reaffirmation of the injunction against the IRS from proceeding against debtor but also justified the assessment of money damages. Tr. at 7–8 (Jan. 29, 1991). Accordingly, the bankruptcy court ordered the IRS to pay debtor $475.00 in compensatory damages, $700.00 in attorney's fees, and $3,525.00 in punitive damages.[9] Tr. at 8–9 (Jan. 29, 1991).

The bankruptcy court's decision of January 29, 1991, was memorialized by its order of February 20, 1991, which was drafted by debtor's counsel and entered by the bankruptcy court without prior circulation to opposing counsel. It is from this order of February 20, 1991, that the IRS now appeals.

5. As the IRS explained to the bankruptcy court at the hearing of January 29, 1990, the IRS had reservations about stating that debtor was in good standing. Debtor's plan, in part, covers her outstanding taxes owing to the federal government for the tax years 1983, 1987, and 1988. The IRS believed debtor was delinquent in her payments under her chapter 13 plan, and further believed there existed outstanding tax liabilities that were not covered under debtor's plan. Tr. at 6 (Jan. 29, 1991). As such, the IRS did not want the "clean letter" to preclude it from performing an audit on any of those respective tax years. *Id.*

6. The IRS's proposed order provided, in pertinent part, that the IRS was found to have acted in reckless disregard of the automatic stay; that the IRS is enjoined from taking any further collection action against debtor, except as provided for and allowed by the Bankruptcy Code and the Internal Revenue Code; and that the IRS is to issue a letter to debtor containing both an apology and a statement that the IRS will take no action against debtor except as permitted by the Bankruptcy Code. Proposed Order (Jan. 8, 1991).

7. Counsel represented to this court that the hearing of January 29, 1991, lasted approximately 10–15 minutes. This estimation is supported by the transcript of that hearing which is 10 pages long.

8. The only new material received by the court in this second hearing was a list reflecting debtor's request for $700.00 in attorney's fees.

9. The bankruptcy court stated:

The court is of the opinion that sanctions are proper here. And, in addition to the injunction that the Court previously issued, that's reaffirmed, it's enjoined from proceeding against this debtor. The fact that there are still tax obligations does not prevent the IRS from proceeding, pursuant to law relative to that. But the sort of thing that has transpired again and again shall not continue. I tried to work it out some other way, and I understand that one is still alive, it's anticipated that there will be obligations in the future relative to the taxes. We don't like a clean lifetime letter, and that certainly was not intended. Sorry that it didn't work out that way, but that's something the IRS does not want to do.

So the Court is of the opinion and hereby awards the debtor the $475, which there was no testimony to contradict that, plus the $700 attorney's fees, for a total of $1,175. The Court finds this an egregious matter, an assault. The Court awards punitive damages of $3,525, for a total of $4,700 in favor of this debtor against the Internal Revenue Service. Tr. at 8–9 (Jan. 29, 1991).

The IRS noticed seven issues for appeal.[10] These seven issues raise three principal matters: 1) the scope of the injunction issued by the bankruptcy court enjoining the IRS from proceeding against debtor; 2) whether Congress, by virtue of 11 U.S.C. §§ 106 and 362, has waived the IRS's sovereign immunity from money damages; and 3) if the IRS's sovereign immunity from money damages has been waived, then whether the facts and circumstances of this case warrant the assessment of compensatory and/or punitive damages.[11]

## II. Standard of Review

A proceeding to prosecute a violation of the automatic stay of 11 U.S.C. § 362 is a core proceeding within the meaning of 28 U.S.C. § 157(b)(1) and (2). *Budget Serv. Co. v. Better Homes of Virginia, Inc.*, 804 F.2d 289, 293 (4th Cir.1986). The standard of review for a core proceeding is set forth in Bankruptcy Rule 8013. Pursuant to Bankruptcy Rule 8013, the bankruptcy court's findings of fact are not to be set aside unless they are "clearly erroneous." The bankruptcy court's conclusions of law, however, are subject to *de novo* review. *See, e.g., Brown v. Mt. Prospect State*

*Bank (In re Muncrief)*, 900 F.2d 1220, 1224 (8th Cir.1990); *Arizona Appetito's Stores, Inc. v. Paradise Village Inv. Co. (In re Arizona Appetito's Stores, Inc.)*, 893 F.2d 216, 218 (9th Cir.1990); *Bangert v. McCauley (In re McCauley)*, 105 B.R. 315, 318 (E.D.Va.1989).

## III. Injunction

■ The bankruptcy court's order of February 20, 1991, provides, in part, "that the IRS is enjoined from proceeding against the Debtor...." Order at 3 (Feb. 20, 1991). No language qualifying or limiting the scope of this injunction is included in this order, and the IRS objects to such to the extent it can be interpreted as precluding the IRS from proceeding against debtor in a lawful manner in the future. The court finds legal merit in the IRS's argument. The bankruptcy court may not enjoin the IRS from proceeding in the future against a debtor in a lawful manner. Therefore, the bankruptcy court's order of February 20, 1991, enjoining the IRS from proceeding against debtor is REVERSED to the extent it precludes the IRS from proceeding against debtor in a lawful manner in the future.[12]

**10.** The following are the seven issues noticed for appeal:

1) Has the United States waived its sovereign immunity under 11 U.S.C. §§ 362(h), 106 and/or 105 for actual damages, including costs and attorney's fees, and punitive damages for violations of the automatic stay provisions of 11 U.S.C. § 362(a)?

2) Did the bankruptcy court have jurisdiction to order an IRS official to issue a "clean letter" to a debtor stating that the debtor's tax problems are nonexistent, that the taxpayer is up to date and in good standing, and to include an apology to the debtor?

3) Did the bankruptcy court have jurisdiction to enjoin the IRS from proceeding against the debtor in any way?

4) If the bankruptcy court had jurisdiction to award punitive damages against the United States, were the punitive damages awarded based on civil or criminal contempt?

5) If the punitive damages were based on criminal contempt, did the bankruptcy court have jurisdiction to award such damages?

6) Did the bankruptcy court have jurisdiction to award punitive damages for violations of the automatic stay which have been corrected?

7) Were the punitive damages awarded based on contempt arising from violations of the auto-

matic stay provisions of 11 U.S.C. § 362(a) or the IRS's objection to the bankruptcy court's ruling from the bench on November 29, 1990, to have an IRS official issue a "clean letter" and apologize to the debtor?
United States' Designation of the Record and Statement of Issues to be Presented on Appeal at 3–4 (Mar. 8, 1991).

**11.** The court notes that on appeal it need not address the issue of whether the bankruptcy court has jurisdiction to order an IRS official to issue a "clean letter" stating that debtor is in good standing. *See supra* note 10. This letter, which never has been issued by the IRS, is not a sanction in the bankruptcy court's order of February 20, 1991. Therefore, the IRS is not required to issue a "clean letter."

**12.** The court notes that this reversal is required because the order prepared by counsel for debtor and signed by the bankruptcy court on February 20, 1991, without prior circulation to opposing counsel, does not accurately reflect the bankruptcy court's January 29, 1991, decision from the bench. On January 29, 1991, the bankruptcy court explained that the IRS was not enjoined from proceeding lawfully to enforce debtor's outstanding tax liabilities not paid

## IV. Sovereign Immunity

 The United States may not be sued absent a waiver of its sovereign immunity. *See, e.g., Block v. North Dakota,* 461 U.S. 273, 280, 103 S.Ct. 1811, 1816, 75 L.Ed.2d 840 (1983); *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). Only Congress can waive the United States' sovereign immunity, and such waivers are to be construed strictly. *See United States v. Sherwood,* 312 U.S. 584, 587, 590, 61 S.Ct. 767, 770, 771, 85 L.Ed. 1058 (1941). On appeal, the IRS argues that Congress has not waived the IRS's sovereign immunity from money damages under 11 U.S.C. § 362(h) for violations of the automatic stay of 11 U.S.C. § 362(a). The court disagrees and concludes that, in limited situations in the bankruptcy context, Congress specifically has waived sovereign immunity for governmental units such as the IRS.

Title 11 U.S.C. § 106 provides three instances in which Congress has waived sovereign immunity for governmental units in bankruptcy cases. First, when a governmental unit asserts a claim, subsection (a) waives the government's sovereign immunity for any claim that is property of the estate and arises "out of the same transaction or occurrence" as the government's claim. Second, regardless of whether the estate's claim against the government arises out of the same transaction or occurrence as the government's claim, subsection (b) waives sovereign immunity for any claim against the government that is property of the estate, but only up to the allowed amount of the governmental unit's

claim. Third, subsection (c) binds governmental units by court determinations of issues arising under those provisions of the Bankruptcy Code that contain the words "creditor," "entity," or "governmental unit." *United States v. Inslaw, Inc. (In re Inslaw, Inc.),* 113 B.R. 802, 809–10 (D.D.C. 1989), *rev'd on other grounds,* 932 F.2d 1467 (D.C.Cir.1991).

 Title 11 U.S.C. § 362(a) provides that the automatic stay is "applicable to all entities." Debtor argues that 11 U.S.C. § 106(c) subjects the IRS to money damages under 11 U.S.C. § 362(h) because of the presence of the trigger term "entities" in section 362(a). Based on the Supreme Court's decision in *Hoffman v. Connecticut Dep't of Income Maintenance,* 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989), the court disagrees. In *Hoffman,* the Supreme Court addressed the specific issue of whether 11 U.S.C. § 106(c) "authorizes a bankruptcy court to issue a money judgment against a State that has not filed a proof of claim in the bankruptcy proceeding." *Id.* at 98, 109 S.Ct. at 2821. Justice White, writing for a plurality, concluded that the language of subsection (c) was indicative of declaratory and injunctive relief, not monetary relief. *Id.* at 102, 109 S.Ct. at 2822–23. In so concluding, Justice White found it significant that unlike subsections (a) and (b) of section 106, subsection (c) contains no express authorization for monetary recovery. *Id.* Consequently, on the basis of *Hoffman,* this court concludes that Congress, in subsection (c), has not waived the IRS's immunity from money damages under 11 U.S.C. § 362(h).[13]

under her plan. *See* Tr. at 8 (Jan. 29, 1991). By enjoining the IRS from proceeding against debtor, the bankruptcy court intended only to prevent future violations of the automatic stay in this bankruptcy proceeding. *Id.* (stating that a "clean lifetime letter" was not intended but that "[t]he sort of thing that has transpired again and again shall not continue").

**13.** *Accord Small Business Admin. v. Rinehart,* 887 F.2d 165, 169–70 (8th Cir.1989); *Inslaw,* 113 B.R. at 810; *In re Lile,* 103 B.R. 830, 835 (Bankr. S.D.Tex.1989); *see also In re Gustafson,* 934 F.2d 216 (9th Cir.1991) (holding that a state is immune by virtue of 11 U.S.C. § 106(c) from money damages for violating the automatic stay

provision of 11 U.S.C. § 362(a)); *cf. In re Pearson,* 917 F.2d 1215, 1216 (9th Cir.1990) (reading the "tea leaves" and holding that "governmental units are immune to damage actions arising from violations of the automatic stay"), *petition for cert. filed,* 59 U.S.L.W. 3535 (U.S. Jan. 28, 1991). *But see IRS v. Nordic Village, Inc. (In re Nordic Village, Inc.),* 915 F.2d 1049, 1051 (6th Cir.1990) (ruling that *Hoffman* is not controlling precedent when case concerns waiver of sovereign immunity under 11 U.S.C. § 106 for federal, as opposed to state, governmental unit), *cert. granted,* —— U.S. ——, 111 S.Ct. 2823, 115 L.Ed.2d 994 (1991). This issue of whether Congress by virtue of 11 U.S.C. § 106(c) has waived

Having concluded that 11 U.S.C. § 106(c) does not permit an award of money damages against the IRS for violating the automatic stay of 11 U.S.C. § 362(a), the court examines 11 U.S.C. § 106(a) and (b) for authority to support the judgment of the bankruptcy court.[14] Section 106(a) and (b) addresses to what extent the government is deemed to have waived its sovereign immunity in bankruptcy proceedings when it pursues a claim against a debtor. Subsection (a) "provides for 'affirmative recovery,' including money judgments," but only in limited circumstances. *Hoffman v. Connecticut Dep't of Income Maintenance (In re Willington Convalescent Home, Inc.),* 850 F.2d 50, 54 (2d Cir.1988), *aff'd,* 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989) (citations omitted); *see also Inslaw,* 113 B.R. at 812–13 (holding that the United States Department of Justice waived its immunity from money damages under subsection (a)). The waiver of sovereign immunity under this subsection encompasses only those claims of an estate that are compulsory counterclaims to a claim filed by a governmental unit against the estate.[15] Subsection (a), thus, permits *unlimited affirmative recovery* upon a finding that the estate's claim arises from the same transaction or occurrence as the government's claim.

Subsection (b) differs from subsection (a) in three ways. First, subsection (b) allows recovery "without regard to whether the estate's claim arose out of the same transaction or occurrence as the government's claim." S.Rep. No. 95–989, 95th Cong., 2d Sess. 29, *reprinted in* 1978 U.S.CODE & ADMIN.NEWS 5787, 5815. In other words, any claim of the debtor may be asserted against the government without it having a connection to the government's claim. Second, subsection (b) specifically limits the amount of the debtor's recovery to the amount of the government's claim allowed by the bankruptcy court, thus permitting no recovery whatsoever if the government's claim is totally disallowed. Third, subsection (b) specifically mandates the procedure to be followed by the bankruptcy court, requiring the debtor's claim to be "offset" against the government's allowed claim, thereby permitting no "affirmative recovery."

The legislative history of section 106 describes the relief available under subsection (a) and not available under subsection (b) as "affirmative recovery." This description is ambiguous, yet its precise meaning affects the practical application of subsections (a) and (b). As already stated, unlike subsection (b), subsection (a) does not expressly mandate any "offset" against the government's claim or use the terminology "allowed claim ... of a governmental unit." *See supra* note 14 for text of statute. Thus, regardless of the size of the estate's claim vis-à-vis the government's claim, recovery under subsection (a) seems to entitle the estate to an "affirmative" award that requires no offset against the government's allowed claim. Although reasonable, this interpretation conflicts both with Congress' longstanding procedure for payment of judg-

---

the federal government's sovereign immunity from money damages should be finally resolved when the Supreme Court decides *In re Nordic Village, Inc.*

**14.** Title 11 U.S.C. § 106(a) and (b) provides: (a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose. (b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

**15.** The legislative history of the Bankruptcy Reform Act of 1978, in part, provides:

[T]he filing of a proof of claim against the estate by a governmental unit is a waiver by that governmental unit of sovereign immunity with respect to compulsory counterclaims, as defined in the Federal Rules of Civil Procedure, that is, counterclaims arising out of the same transaction or occurrence. The governmental unit cannot receive a distribution from the estate without subjecting itself to any liability it has to the estate within the confines of a compulsory counterclaim rule. Any other result would be one-sided. The counterclaim by the estate against the governmental unit is without limit.

S.Rep. No. 95–989, 95th Cong., 2d Sess. 29, *reprinted in* 1978 U.S.CODE & ADMIN.NEWS 5787, 5815.

ments against the United States and with the legislative history of section 106.

For payment of judgments against the United States, Congress has directed the Comptroller General to "withhold paying that part of a judgment against the United States Government ... that is equal to a debt the plaintiff owes the Government." 31 U.S.C. § 3728 (1983). This section, thus, entitles the claimant to collect only that portion of a judgment against the United States that exceeds the government's allowed claim, thereby requiring an offset of the claims. The legislative history of section 106 also is consistent with such an offset procedure: "Under [subsection (b)], the setoff permitted is only to the extent of the governmental unit's claim. No affirmative recovery is permitted. Subsection (a) governs affirmative recovery." S.Rep. No. 95–989, 95th Cong., 2d Sess. 29, *reprinted in* 1978 U.S.CODE & ADMIN.NEWS 5787, 5815. Therefore, the recovery and the procedure for such recovery under these subsections are addressed together in the legislative history. In defining recovery under subsection (b), the Senate Judiciary Committee distinguishes it from recovery under subsection (a), which it describes as "affirmative." This context in which the Judiciary Committee used the term "affirmative recovery" then defines that term as the amount exceeding the government's allowed claim.

**16.** This court also agrees with the Eighth Circuit's reasoning in reaching the same conclusion:

This mandatory language [of subsection (b)] requiring offset] comports with the established principle that an award to a plaintiff on a claim is ordinarily offset against an award to the defendant on a counterclaim; a single judgment is entered for the excess, if any. Thus, the tax claim established by the IRS must initially be offset by the counterclaim of the estate. A contrary rule would not only violate the language of § 106(b), but would contravene general principles of equity by requiring the governmental unit to pay the award to the debtor while being forced to attempt to recover its own claim through bankruptcy.

In our view, therefore, subsections (a) and (b) of § 106 must be read together. Section 106(a) is applicable only where the debtor's claim exceeds the claim of the governmental unit, and then, affirmative recovery is allowed only to the extent of such excess.

Accordingly, this court concludes that in cases in which a debtor seeks monetary relief, affirmative recovery under subsection (a) refers to the amount of the recovery that exceeds the government's allowed claim against the debtor. The debtor is entitled to a single judgment for the excess, if any, of his claim above the government's allowed claim in the bankruptcy proceeding.[16] However, if the government's claim is disallowed, the debtor may still affirmatively recover the full amount of his allowed claim.

This distinction clarifies the practical consequences of collecting a plaintiff's judgment under subsection (a), and it suggests that the court need not consider subsection (a) and its requirement that the claims arise from the same transaction or occurrence if the debtor seeks an amount no greater than the government's claim against the debtor. *See United States v. McPeck,* 910 F.2d 509, 512–13 (8th Cir.1990) (reading subsections (a) and (b) together and applying subsection (a) only when the debtor's claim exceeds the government's claim). The debtor in this case seeks to affirm the bankruptcy court's award of $4,700.00, which exceeds the two proofs of claim filed by the IRS in the amount of $2,262.54. The court, therefore, now considers the application of subsection (a) to debtor's claim.[17]

*United States v. McPeck,* 910 F.2d 509, 512–13 (8th Cir.1990) (citations and footnote omitted).

**17.** The Eighth Circuit's approach in *McPeck* makes practical sense, i.e., first determine the amount of the claims and then consider subsection (a) only if the debtor's claim exceeds the government's allowed claim. Although this court concludes later that debtor's allowed claim for damages does not exceed the government's claim, *see infra* at 423–25, thus dictating an analysis under subsection (b), the court does not follow this approach here. This case presents an issue of recurring importance, namely, whether IRS violations of an automatic stay arise out of the same transaction or occurrence as IRS claims for overdue taxes. Moreover, foreclosing analysis under subsection (a) when the debtor asserts a claim that potentially exceeds the government's claim, as here, may require relitigation if either the *McPeck* analysis or the damages determination proves to be incorrect.

■ Section 106(a) specifies three conditions for a waiver of sovereign immunity: 1) the governmental unit must assert a claim against the estate; 2) the estate's claim against the governmental unit must be "property of the estate"; and 3) the claim of the estate must arise "out of the same transaction or occurrence" as the governmental unit's claim. Although the first two elements are not in dispute in the case at bar,[18] this court cannot conclude that the debtor's claim against the government, premised on the IRS violations of the automatic stay, arises out of the same transaction or occurrence as the government's claim against the debtor, premised on debtor's overdue income taxes.

■ In *Sue & Sam Mfg. Co. v. B–L–S Constr. Co.*, 538 F.2d 1048, 1051–53 (4th Cir.1976), the Fourth Circuit set out commonly used tests to determine whether a claim arises out of the same transaction or occurrence that is the subject matter of an opposing party's claim: (1) whether the issues of fact and law raised by the claim and the counterclaim are largely the same; (2) whether *res judicata* would bar a subsequent suit on the counterclaim, absent the compulsory counterclaim rule; (3) whether substantially the same evidence supports or refutes the claim as well as the counterclaim; and (4) whether the claim has any logical relationship to the counterclaim. Noting that the purpose of the compulsory counterclaim rule was to avoid a multiplicity of suits, the court favored a "broad realistic interpretation" of these tests. *Id.* This rationale, however, conflicts with the general principle that courts strictly construe waivers of sovereign immunity. *See supra* at 419. Moreover, the issue here is not whether debtor can or must assert the "counterclaim," but rather and to what extent the government waived its immunity to debtor's "counterclaim" when the IRS filed its proof of claim in the bankruptcy proceedings. With these considerations in mind, the court applies the transaction-occurrence analysis of *Sue & Sam Mfg. Co.* and concludes that debtor's

claim does not arise from the same transaction or occurrence as the subject matter of the IRS's claim.

The transaction or occurrence giving rise to the IRS's claim is debtor's failure to pay federal income taxes in the years 1983, 1987, and 1988. The transaction or occurrence giving rise to debtor's claim is the IRS's three violations of the automatic stay on August 3, 1989; March 28, 1990; and May, 1990. The events that form the subject matter of the parties' respective claims, therefore, are years apart and raise separate, unrelated issues of fact and law.

To prevail, each party must prove an unrelated set of facts to support separate causes of action. Debtor must present evidence of the IRS's violation of the automatic stay, i.e., an effort to collect the taxes claimed owing, and the IRS would be liable, regardless of whether debtor actually owes the IRS any back taxes. Resolution of debtor's tax liability under the federal tax laws, therefore, is unnecessary to a determination of the IRS's liability under the bankruptcy laws. Thus, the essential facts alleged by the IRS are not a part of the cause of action set forth in debtor's claim. *See Sue & Sam Mfg. Co.*, 538 F.2d at 1051. Proof of debtor's claim, therefore, requires separate evidence than proof of the IRS's claim. They are separate transactions that could support a permissive counterclaim in another context, but that do not arise from the same transaction or occurrence. Accordingly, principles of *res judicata* would not bar a subsequent suit on debtor's claim because the proof and issues are unrelated to the proof and issues raised by the IRS.

The court recognizes that the IRS's claim for overdue income taxes does have some connection to debtor's claim for violation of the automatic stay in that the IRS would not have violated the stay but for debtor's failure to pay taxes. This connection alone, however, does not constitute a logical relationship sufficient to support a conclusion that the two claims arise from the

---

**18.** The IRS apparently concedes that the first two requirements of 11 U.S.C. § 106(a) have been met, i.e., that the two proofs of claim filed by the IRS constitute a claim by a governmental unit against the estate, and that debtor's claim is property of the estate.

same transaction or occurrence.[19] The dissimilarity of the evidence and legal issues and the duration of time between the events diminishes the logical relationship and justifies the conclusion that the two events do not arise from the same transaction or occurrence. This connection, therefore, does not support a waiver of sovereign immunity under 11 U.S.C. § 106(a).

■ Although the estate's claim against the government does not arise from the same transaction or occurrence as the government's claim against the estate, 11 U.S.C. § 106(b) entitles the estate to recover up to the amount of the allowed claim by the government against the estate. *See supra* at 420–21. The court concludes, therefore, that the IRS has waived its sovereign immunity from monetary damages to the extent of the allowable amount of the government's claim of $2,262.54 for back taxes from debtor, and the damages assessed by the bankruptcy court shall be offset against the government's allowable claim to the extent that such damages comport with 11 U.S.C. § 362(h).

### V. Damages

■ Title 11 U.S.C. § 362(h) provides that "[a]n individual injured by any *willful violation* of a stay provided by this section *shall recover actual damages,* including costs and attorneys' fees, and, *in appropriate circumstances, may recover punitive damages.*" (emphasis added).[20] To constitute a "willful violation" under 11 U.S.C. § 362(h) the violator must have known of the automatic stay and must

have intentionally or deliberately undertaken acts that violated the stay. *See, e.g., Goichman v. Bloom (In re Bloom),* 875 F.2d 224, 227 (9th Cir.1989) (adopting the definition set forth in *Inslaw, Inc. v. United States (In re Inslaw),* 83 B.R. 89, 165 (Bankr.D.D.C.1988) (subsequent history omitted)); *B. Cohen & Sons, Inc. v. New Plan Realty Trust,* Nos. 89–3348, 90–1185, 1991 WL 17874 (E.D.Pa. Feb. 13, 1991) (LEXIS, Genfed library, Courts file); *see also Budget Serv. Co. v. Better Homes of Virginia, Inc.,* 804 F.2d 289, 293 (4th Cir. 1986) (finding the bankruptcy court acted within its power in assessing money damages under 11 U.S.C. § 362(h) after the bankruptcy court concluded that the violator "knew of the pending petition and intentionally attempted to repossess the vehicles in spite of it").

The record on appeal, including the parties' stipulation in which the IRS concedes three violations of the automatic stay with knowledge thereof, supports the assessment of costs and attorney's fees under the "willful violation" standard of 11 U.S.C. § 362(h). Furthermore, the court does not find clearly erroneous the bankruptcy court's specific award of $475.00 in compensatory damages and $700.00 in attorney's fees. Debtor presented adequate evidence of these damages,[21] and, contrary to the IRS's position, the court does not read debtor's testimony to be inherently contradictory to her request of $475.00 in compensatory damages. Accordingly, the bankruptcy court's order of compensatory damages is AFFIRMED.

**19.** In *Ashbrook v. Block,* 917 F.2d 918 (6th Cir. 1990), the Sixth Circuit came to the same conclusion in factually similar circumstances. There, the debtors in bankruptcy sought to establish that their claim against the Farmers Home Administration (FmHA) was a compulsory counterclaim entitling the debtors to relief under § 106(a). The FmHA had filed a proof of claim against the debtors for loans it had made to them. The debtors claimed that the FmHA's failure to follow federal regulations in their loan transactions with the debtors caused the debtors personal injury. The Sixth Circuit concluded that the debtors' claim was not logically related to the FmHA's proof of claim "[b]ecause most of the infringements cited in the [debtors'] complaint occurred after the loans were closed." *Id.* at 923. The court reasoned further that "[i]n

filing its proof of claim ... the [government] merely seeks to establish that the [debtors] owe the government a stated sum. The [government's] claim and the [debtors'] claims are incomparable." *Id.* at 924.

**20.** Pursuant to the statutory language of 11 U.S.C. § 362(h), therefore, an award of actual damages is mandatory upon a finding of a willful violation, but an award of punitive damages is discretionary and proper only in appropriate circumstances.

**21.** Debtor supported her request for compensatory damages and attorney's fees with an itemized list for each.

■ The final matter left for resolution is the issue of punitive damages. Pursuant to 11 U.S.C. § 362(h), punitive damages may be assessed for willful violations of the automatic stay "in appropriate circumstances." Thus, in addition to the requirement of a "willful violation," "appropriate circumstances" must warrant the punitive damages. The case law interpreting the "appropriate circumstances" language of 11 U.S.C. § 362(h) convinces this court that only egregious or vindictive misconduct warrants punitive damages for willful violations of the automatic stay of 11 U.S.C. § 362. *Accord Farmers Home Admin. v. Ketelsen (In re Ketelsen)*, 880 F.2d 990, 993 (8th Cir.1989) (affirming district court reversal of punitive damages levied by bankruptcy court against Farmers Home Administration).

For example, in *Budget Serv. Co.*, the Fourth Circuit affirmed the award of punitive damages when the creditor violated the automatic stay of 11 U.S.C. § 362, after the debtor filed a petition for reorganization under chapter 11 by attempting to repossess vehicles the creditor had leased to debtor. In that case, the creditor resorted to self-help to recover the leased vehicles and, in so doing, physically injured one of debtor's employees on one occasion and possessed a firearm on another occasion. 804 F.2d at 291. Similarly, in *Cuffee v. Atlantic Business and Community Dev. Corp. (In re Atlantic Business and Community Corp.)*, 901 F.2d 325, 329 (3d Cir. 1990), the Third Circuit affirmed as not clearly erroneous the finding of fact that a landlord willfully violated the automatic stay so as to warrant punitive damages under 11 U.S.C. § 362(h), when the landlord continued attempts to evict his tenant after the tenant had filed a petition in bankruptcy under chapter 11 and after the bankruptcy court had entered an order restraining such efforts. Finally, in *In re Lile*, 103 B.R. 830, 841 (Bankr.S.D.Tex.1989), the bankruptcy court levied $100,000.00 in punitive damages against the IRS for acting "with reckless disregard and in 'arrogant defiance' " of the automatic stay provision of 11 U.S.C. § 362(h), when it physically seized and retained for months the debtor's personal property.[22]

■ In light of the case law interpreting the "appropriate circumstances" language of 11 U.S.C. § 362(h), the court finds that the bankruptcy court erroneously awarded punitive damages to the debtor in this case. The facts are not disputed, as the IRS admitted three violations of the automatic stay, and took measures to correct its violations before debtor filed her complaint. The bankruptcy court initially concluded that this conduct did not warrant either compensatory or punitive damages. *See* Tr. at 21 (Nov. 30, 1990); *supra* note 4 and accompanying text. Nothing occurred between November 30, 1990, the date the bankruptcy court initially decided the case, and January 29, 1991, the date the bankruptcy court redecided the case, except that the parties were unable to agree on the terms of the order memorializing the decision of November 30, 1990; and, after the

---

**22.** *In re Lile* clearly is distinguishable from this case. In *In re Lile,* the debtor was the sole shareholder and president of a restaurant. 103 B.R. at 832. Both the debtor and the restaurant filed chapter 11 bankruptcy petitions on June 20, 1986. *Id.* The bankruptcy case of the restaurant was dismissed on December 7, 1987. *Id.* On or about January 4, 1988, a final Notice and Demand for payment of taxes was sent to the restaurant, which Notice and Demand was returned as refused. *Id.* On January 22, 1988, the IRS obtained an order for entry on the premises to effect a levy. *Id.* On January 27, 1988, agents of the IRS went to the restaurant to seize property in order to satisfy the restaurant's outstanding tax liability. *Id.* At the seizure, debtor told an agent that debtor was a chapter 11 debtor and owned the lease of the premises.

*Id.* Additionally, an agent was told that debtor or debtor's wife owned most of the property located therein. *Id.* A copy of debtor's lease showing debtor as the owner also was presented, and either debtor or debtor's attorneys cautioned the agents that taking debtor's personal property would violate 11 U.S.C. § 362. *Id.* at 832–33. Despite these warnings the IRS seized the leasehold estate and the property contained therein by chaining and/or padlocking the doors and gates of the leased space. *Id.* at 833. The IRS retained the seized property until debtor produced sufficient proof of ownership. As a result, some of debtor's property was returned on March 17, 1988. *Id.* at 834. The remaining items were not returned until December 19, 1988. *Id.*

bankruptcy court clarified its ruling, the IRS objected to providing debtor a "clean letter." *See supra* at 416–17. Inexplicably, on January 29, 1991, the bankruptcy court changed its initial decision and awarded damages.

Punitive damages are not legally warranted in a case simply because one party disagrees with another party on the terms of an order and subsequently objects to the court's decision after the court has clarified its ruling. Neither this disagreement, nor the IRS's prior violations of the stay in this case, constitute "appropriate circumstances" under 11 U.S.C. § 362(h) for the award of punitive damages. Accordingly, the bankruptcy court's order of punitive damages in the amount of $3,525.00 is REVERSED.

## VI. Conclusion

As stated above and for the reasons set forth in this Opinion and Order, the court AFFIRMS, in part, and REVERSES, in part, the bankruptcy court's order of February 20, 1991. Specifically, the bankruptcy court's order enjoining the IRS from proceeding against debtor is REVERSED to the extent it precludes the IRS from proceeding against debtor in a lawful manner; the bankruptcy court's award of $475.00 in compensatory damages and $700.00 in attorney's fees is AFFIRMED; and the bankruptcy court's award of $3,525.00 in punitive damages is REVERSED. This case is hereby REMANDED to the bankruptcy court to proceed in accordance with this Opinion and Order.