**In re James Stephen RHODES and Sarah Rhodes.**

**James S. RHODES and Sarah S. Rhodes, Plaintiffs,**

v.

**INTERNAL REVENUE SERVICE, Defendant.**

**Civ. No. 93–5012.**

United States District Court,
W.D. Arkansas,
Fayetteville Division.

Feb. 18, 1993.

Stephen E. Adams, Stephen E. Adams, Ltd., Fayetteville, AR, for plaintiffs.

John D. Russell, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant.

## MEMORANDUM OPINION

WATERS, District Judge.

Before the court is an order entered by United States Bankruptcy Judge James G. Mixon holding the Internal Revenue Service (IRS) guilty of contempt in connection with a finding that the Internal Revenue Service willfully violated the automatic stay provisions of the Bankruptcy Code. The order in question was entered on June 23, 1992. On February 5, 1993, the court received the record in this matter. The court has been advised that neither party wishes to brief the issues any further. Accordingly, this matter is ready for resolution.

## I. FACTS AND PROCEEDINGS BELOW.

On December 31, 1990, James and Sarah Rhodes filed a voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code. The Internal Revenue Service was listed as a creditor as a result of taxes owed by James S. Rhodes doing business as Rhodes & Company. The IRS had a prepetition tax claim against James Rhodes in the amount of $12,313.92. The debtors claimed as exempt property their residence located at 359 East Sycamore, Fayetteville, Arkansas. 11 U.S.C. § 522. No objection was filed to the debtors' claim of exemption.

Michael Wells, an agent of the IRS, was in charge of collecting the amount of the tax from Mr. Rhodes. In January of 1991, Wells contacted Mr. Rhodes and was informed that Rhodes had filed bankruptcy. Mr. Rhodes, however, could not furnish a bankruptcy case number. Wells contacted the IRS's Special Procedures Branch of the Little Rock Office and attempted to verify the bankruptcy of Mr. Rhodes. The search revealed no record of a bankruptcy filing by Mr. Rhodes. On April 18, 1991, the Internal Revenue Service acting by and through its collection agent, Michael Wells, filed a notice of lien in Washington County, Arkansas. The notice of tax lien was in the amount of $10,306.77.

At the end of April, 1991, or the first part of May, 1991, Wells met with Mr. Rhodes and learned that Mr. Rhodes had in fact filed bankruptcy. Wells then closed his file and informed Mr. Rhodes that all further matters would be handled through the IRS's Special Procedure Branch in the Little Rock Office.

In June of 1991 the debtors entered into an agreement for the sale of their home located at 359 East Sycamore. The agreed purchase price was in a sufficient amount to allow the debtors to pay off the existing

mortgage and obtain a payment for the equity they had in the home. During the closing preparations, the debtors became aware of the existence of the federal tax lien on their home. The debtors, their accountant, and their attorney, negotiated with the IRS for release of the tax lien. The IRS refused to release its lien on the property unless it was paid one-half of the net proceeds ($7,632.62) resulting from the sale of the house together with delivery of two federal income tax refund checks in the gross aggregate amount of $3571.11. The sale of the home was consummated on August 1, 1991.

The refund checks in question were the debtors' federal income tax refunds for the years 1988 and 1989. As of December 31, 1990, the day the bankruptcy case was commenced, the debtors had not prepared or filed their federal or state income tax returns for the years of 1988, 1989, or 1990. After the filing of the petition, the returns were prepared and filed reflecting an entitlement to income tax refunds.

The trustee, John T. Lee, filed a motion for turn over of the property of the estate on August 19, 1991. The motion requested that the debtors turn over to the trustee, *inter alia,* the income tax refund checks previously given to the IRS in order to obtain a release of the federal tax lien against the debtors' home. After the trustee learned these funds had been turned over to the IRS, he filed a motion for turn over of the income tax refunds against the United States. On December 12, 1991, an order was entered in which the United States agreed to turn over the refunds it had received.

On August 8, 1991, the debtors filed a motion to cite the IRS for contempt for violation of the automatic stay provisions of 11 U.S.C. § 362. On September 24, 1991, the IRS filed an objection to the motion to cite the IRS for contempt. On March 12, 1992, a hearing was held on the motion for contempt.

At the hearing, the IRS conceded that a violation of the stay occurred but argued that the violation was not willful. The debtors argued that there was substantial evidence of willfulness on the part of the IRS and that they should be awarded damages.

On June 23, 1992, 147 B.R. 492, the bankruptcy court entered an order finding the IRS to have willfully violated the automatic stay provisions and as sanctions ordered the IRS to satisfy the balance of any unpaid portion of its claim filed in this case. Specifically, the court found:

By the first of May, the IRS was aware of the bankruptcy case, yet the IRS did nothing to correct the improper recording of the tax lien. Failure to correct an act done in violation of the stay has been held to be an act of contempt. *Abrams v. Southwest Leasing and Rental, Inc. (In re Abrams),* 127 B.R. 239, 241–42 (Bankr. 9th Cir.1991) citing *Knaus v. Concordia Lumber Co., Inc. (In re Knaus),* 889 F.2d 773 (8th Cir.1989). In addition, the IRS insisted on the payment of its prepetition claim as a condition for release of the improperly imposed tax lien by coercing the debtors to convey two tax refund checks and $7,632.62 to the IRS. The refund checks were property of the estate, and, the debtors' conveyance of these checks to the IRS subjected the debtors to liability to the chapter 7 trustee under 11 U.S.C. § 549. The IRS offered no explanation why it chose to ignore the automatic stay.

Therefore, the IRS is found to be in willful contempt of the automatic stay. As sanctions for violating the automatic stay, the IRS is ordered to satisfy the balance of any unpaid portion of its claim filed in this case. Proof of satisfaction of the tax claim shall be in writing and shall be forwarded to counsel within ten (10) days of the effective date of this order. The IRS is also ordered to release any encumbrance on any of the debtors' property that is based on the debtors' prepetition tax liability.

The bankruptcy clerk shall forthwith serve a copy of this order of contempt on the Internal Revenue Service. This order of contempt shall become effective as a final order ten days after service of the

order on the IRS unless, within the ten-day period, the IRS serves and files with the bankruptcy clerk an objection to this order as provided by Federal Rule of Bankruptcy Procedure 9033(b). If an objection is filed, this order shall be subject to review by the district court pursuant to Federal Rule of Bankruptcy Procedure 9033.

*Contempt Order of June 23, 1992*, at pages 494–95.

Thereafter, the IRS objected to the bankruptcy court's order and the debtors filed a reply to the objection. On January 26, 1993, the Bankruptcy Court transmitted this matter to the Clerk of the United States District Court.

## II. DISCUSSION.

■ Pursuant to Rule 9033(d) the court must make a "de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions." Bankr.R. 9033(d). The IRS objects to the contempt order on two grounds. First, the IRS argues that "[t]he Bankruptcy Court did not make any findings as to the actual damages sustained by the debtors for the alleged willful violation of the automatic stay." In this regard, the IRS argues that the debtors failed to prove damages with particularity. Second, the IRS states it "was unable to present all of its evidence on the issue of whether the United States willfully violated the automatic stay."

In connection with the second issue, the court notes that a hearing on the motion for contempt was initially set for February 12, 1992, by notice of December 31, 1991. On January 29, 1992, the matter was continued until March 12, 1992. Thus, the IRS had ample notice of the hearing of this matter. Further, the court notes that at the March 12, 1992, hearing the IRS did not move for a continuance nor did it ask that the record remain open in order for it to present further evidence at a later time. Rather, counsel for the IRS merely stated that "[a]t this time, your Honor, the government has, unfortunately, no further witnesses. One of the witnesses who was expected to be here could not be here today, so we have no further witnesses." *Transcript* at 78.

On February 5, 1993, this court wrote the counsel in this case and asked whether the parties desired to file additional briefs in this matter. The court was advised that the parties did not wish to provide further briefs and no request was made for the court to hear additional evidence. Thus, the court finds this objection to be without merit.

■ "Upon the filing of a bankruptcy petition, section 362 imposes automatically a stay upon most actions by creditors to satisfy their claims against the debtor...." *Knaus v. Concordia Lumber Company, Inc. (In re Knaus)*, 889 F.2d 773, 774 (8th Cir.1989). Section 362(h) provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). "A willful violation of the automatic stay occurs when the creditor acts deliberately with knowledge of the bankruptcy petition." *Knaus v. Concordia Lumber Company, Inc. (In re Knaus)*, 889 F.2d 773, 775 (8th Cir.1989). The failure to correct an act done in violation of an automatic stay has been held to be an act of contempt. *See e.g., Knaus v. Concordia Lumber Company, Inc. (In re Knaus)*, 889 F.2d 773, 775 (8th Cir.1989). *See also Abrams v. Southwest Leasing and Rental, Inc. (In re Abrams)*, 127 B.R. 239, 241–42 (Bankr. 9th Cir.1991).

The testimony in this case demonstrated that by May of 1991, the IRS was aware of the bankruptcy case. Despite this knowledge, nothing was done to remove the lien from the property of the debtors. Additionally, after obtaining knowledge of the bankruptcy the IRS refused to release its

lien and in fact insisted on receiving one-half the net proceeds from the sale of the home and the debtors' two income tax refund checks. There is ample evidence to support the bankruptcy court's finding of a willful violation of the bankruptcy stay.

 Parties alleging willful violations must demonstrate actual damages. "Failure to proffer credible evidence of damages results in an inability for Debtors to qualify for damage awards." *In re Still*, 117 B.R. 251, 254 (Bankr.E.D.Tex.1990). Monetary relief may not be ordered against the IRS. *See United States v. McPeck*, 910 F.2d 509, 512 (8th Cir.1990); *Small Business Admin. v. Rinehart*, 887 F.2d 165, 169–70 (8th Cir.1989); *Davis v. I.R.S.*, 136 B.R. 414, 419 (E.D.Va.1992) (IRS's immunity from money damages under § 362(h) not waived by provisions of 11 U.S.C. § 106(c)), *relying on, Hoffman v. Connecticut Dep't of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989). However, the waiver of sovereign immunity found in 11 U.S.C. § 106(b) allows an "offset of the governmental unit's claim against the estate." *United States v. McPeck*, 910 F.2d 509, 512 (8th Cir.1990).

The IRS contends the debtors failed to prove damages with particularity and that an offset of the entire proof of claim which lists taxes totally $12,313.92 was in error. We conclude there was sufficient evidence introduced to support a total offset of the claim of the IRS. In violation of the stay the IRS received one-half ($7,172.13) of the proceeds of the house sale. This money would have otherwise gone to the debtors as it represented their equity in property claimed to be exempt from the bankruptcy estate. The IRS also obtained the $3,571.11 representing the federal income tax refund checks that the debtors turned over to the IRS.[1] The debtors also testified that they incurred $780 in accountant fees and $2400 in attorney's fees relating to the lien of the IRS and their attempts to remove the lien in an effort to sell their home. Further, the debtors testified that the closing of the sale of the home had to be rescheduled which resulted in additional costs to them and delayed their ability to arrange for new housing for their family. The debtors were forced to incur additional expenses, to expend their time and energy, and suffered stress and anxiety as a result of the willful violation of the state. We conclude the debtors met their burden of establishing actual damages and that the bankruptcy court's action in offsetting the entire claim of the IRS was correct and proper.

### III.  CONCLUSION.

For the reasons stated, we conclude that the proposed findings of fact and conclusions of law of the bankruptcy court are fully supported by the evidence presented. A separate order in accordance herewith will be concurrently entered.

---

1. The IRS has pursuant to an order entered in December of 1991 agreed to turn this sum over to the trustee.