172 B.R. 415 (1994)
In the Matter of Gail K. WASHINGTON (Chapter 13 Case 92-40489), Debtor.
Gail K. WASHINGTON, Plaintiff,
v.
INTERNAL REVENUE SERVICE and United States of America, Defendants.
Adv. No. 93-4014.
United States Bankruptcy Court, S.D. Georgia, Savannah Division.
May 13, 1994.
*416 *417 Wade Gastin, Savannah, GA, for plaintiff.
James B. Thompson, Jr., Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for defendants.

MEMORANDUM AND ORDER
LAMAR W. DAVIS, Jr., Chief Judge.
The trial of the above case was held on February 2, 1994. After consideration of the evidence and applicable authorities I make *418 the following Findings of Fact and Conclusions of Law.

FINDINGS OF FACT
Debtor's Chapter 13 case was filed March 9, 1992. Debtor properly scheduled the Internal Revenue Service ("IRS") as a creditor in her case, and on March 10, 1992, the IRS received notice of the pendency of her case pursuant to notice issued by the Clerk of this Court. The IRS timely filed a proof of claim in Debtor's case indicating that it held an unsecured claim in the amount of $6,419.11. On July 29, 1992, Debtor's Chapter 13 Plan was confirmed.
Debtor's obligation to the IRS stems from a 1987 tax obligation on which she was jointly liable with her former husband, Mr. Verdell Washington, as well as an individual obligation from the 1991 tax year. Mr. Washington died in December of 1987, and Debtor has since filed her tax returns as a single taxpayer. On January 9, 1993, the IRS issued a notice of levy upon Debtor's employer, Southern Intermodal Logistics, a trucking firm where Debtor worked as a driver. The notice indicated that the IRS was placing a levy on Debtor's wages. Debtor received word of the levy through the dispatcher on duty at Southern Intermodal Logistics. Debtor testified that she was extremely embarrassed and upset when the dispatcher told her of the levy.
Upon learning of the levy, Debtor contacted her attorney, Wade Gastin, and he petitioned this Court ex parte for issuance of a stop levy order. On January 14, 1993, such an order was issued by the undersigned. Pursuant to that order, a release of Debtor's wages was executed by the bankruptcy unit of the IRS on February 9, 1993. As a result, the levy did not deprive Debtor of any of her wages.
Debtor alleges that the IRS' actions in levying upon her wages was a willful violation of the automatic stay under section 362(h) of the Bankruptcy Code. Accordingly, Debtor seeks, as damages under section 362(h), lost wages, in the total amount of $350.00, for three days of work that she was forced to miss when she was meeting with her attorney and appearing in court for the trial of this matter. Debtor also claims that her employer began to treat her differently after the levy, and as a result, she felt compelled to find other employment. Debtor did not, however, present any evidence which supports a finding that she had additional lost wages as a result of any actions by her employer. Finally, Debtor seeks compensation for attorney's fees, as well as an award of punitive damages against the IRS.
The United States raises a number of defenses, including a lack of personal jurisdiction and sovereign immunity. It further asserts that it did not willfully violate the automatic stay, and that Debtor has not proven any of the damages alleged. In support of these defenses, the United States called as its witness Ms. Sams-Weems, a revenue officer with the IRS. Ms. Sams-Weems, relying upon IRS computer records, testified that the bankruptcy unit received notice of the Debtor's filing in April of 1992, that the Service filed a claim in Debtor's case in June of 1992 and that a "bankruptcy hold" was placed on Debtor's tax file to prevent any post-petition collection activity. Ms. Sams-Weems then testified as to how the post-petition levy on Debtor's wages came about. She first explained that, when dealing with a tax obligation on which a husband and wife are jointly liable, the Service's current collection system is keyed exclusively to the name and Social Security number of the spouse who appears first on the joint return. As a result, if the spouse, whose name and Social Security number appear first on the joint return, does not file a bankruptcy, the collection unit of the IRS does not put a "bankruptcy hold" on the collection file for that particular obligation. In other words, when, as in this case, the spouse not appearing first on the joint return, is the only party filing bankruptcy, the Service's current system is incapable of transmitting any information regarding the spouse's bankruptcy to the collection file for the joint tax obligation.
Ms. Sams-Weems went on to explain that, in response to some post-petition collection activity, a debtor will typically notify the IRS that he or she has filed a bankruptcy case, and at that point, the Service will immediately *419 respond by verifying the information, releasing all levys and manually entering the information in their records so as to suspend further collection activity. This is accomplished, according to Ms. Sams-Weems, by adding the information concerning the bankruptcy debtor coded to her Social Security number to the Internal Revenue Service collection file under the name of the primary taxpayer. Under the IRS' current system, then, it is virtually certain that the IRS will not get the bankruptcy information of a taxpayer, whose name does not appear at the top of a joint return, into the collection file for that joint tax obligation until the IRS has initiated post-petition collection activities against the taxpayer.

CONCLUSIONS OF LAW
This case presents three basic issues. The first is whether the IRS "willfully violated" the automatic stay under section 362(h) of the Bankruptcy Code when it attempted to collect on a pre-petition tax obligation by levying upon Debtor's wages post-petition. The second issue is whether the United States of America, as the true party in interest in this case, has waived its sovereign immunity under section 106 of the Code as to any damages which are properly awarded under section 362(h). The final issue is whether Plaintiff has proven any damages under section 362(h).
1. Willful Violation of the Automatic Stay
Section 362(a) of the Bankruptcy Code imposes an "automatic stay" upon the filing of a petition in bankruptcy, which prohibits, among other things, any act to obtain possession of estate property or to collect, assess, or recover a claim against a debtor that arose before the commencement of the debtor's bankruptcy case. 11 U.S.C. §§ 362(a)(3) and (a)(6).[1] "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws,"[2] and section 362(h) was added to the Bankruptcy Code to provide courts with an enforcement mechanism to protect a debtor from creditors who willfully violate the stay. See In re Solis, 137 B.R. 121, 124 (Bankr.S.D.N.Y.1992). In this regard, section 326(h) provides:
An individual injured by any willful violation of a stay provided by [§ 362(a)] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.
11 U.S.C. § 362(h).
The requirement that a stay violation be "willful" does not mean that an entity must act with the specific intention of violating the stay. To the contrary, this court has previously held that "willful", as the term is used in section 362(h), is satisfied when an entity engages in a deliberate act that is done in violation of the automatic stay with knowledge that the debtor has filed a petition in bankruptcy. See McDougald v. Internal Revenue Service (Matter of McDougald), Adv. No. 90-4177, 1991 WL 635259, slip op. at 12 (Bankr.S.D.Ga. April 24, 1991)[3] "[W]here there is actual notice of the bankruptcy it must be presumed that the violation was deliberate or intentional." Homer Nat'l Bank v. Namie, 96 B.R. 652, 654 (W.D.La. 1989).
The IRS does not dispute that it is subject to the automatic stay imposed under 11 U.S.C. § 362(a). Nor does it dispute that, after receiving notice of Debtor's Chapter 13 *420 bankruptcy, it violated the automatic stay by effecting a post-petition levy upon Debtor's wages. I therefore conclude that the IRS' actions in sending a notice of levy to Debtor's employer constituted a willful violation of the automatic stay under section 362(h) of the Code.
2. Waiver of Sovereign Immunity
Debtor has named both the IRS and the United States of America as Defendants in this action. The IRS is a bureau within the Department of the Treasury of the United States of America, and it is not authorized to sue or be sued in its own right.[4] The United States of America, therefore, is the only party properly named as a Defendant in this case. Accordingly, the Internal Revenue Service is dismissed as a Defendant in this action.[5]
The doctrine of sovereign immunity bars all lawsuits against the United States of America unless Congress has provided an express and unequivocal waiver of such immunity. Block v. North Dakota, 461 U.S. 273, 280, 103 S.Ct. 1811, 1816, 75 L.Ed.2d 840 (1983); U.S. v. Nordic Village, Inc., ___ U.S. ___, ___ - ___, 112 S.Ct. 1011, 1014-15, 117 L.Ed.2d 181 (1992); U.S. v. Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607, 613 (1980); U.S. v. King, 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52, 56 (1969). Moreover, any waiver of immunity "must be construed strictly in favor of the sovereign, and not enlarged beyond what the language requires." U.S. v. Nordic Village, Inc., ___ U.S. at ___, 112 S.Ct. at 1015 (quoting Ruckelshaus v. Sierra Club, 463 U.S. 680, 685, 103 S.Ct. 3274, 3278, 77 L.Ed.2d 938 (1983)). Congress provided for a limited waiver of sovereign immunity in section 106 of the Bankruptcy Code, which provides:
(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.
(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.
(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity 
(1) a provision of this title that contains "creditor", "entity" or "governmental unit" applies to governmental units; and
(2) a determination by the court of an issue arising under such a provision binds governmental units.
11 U.S.C. § 106.
In construing section 106, the Supreme Court has characterized subsections (a) and (b) as unequivocal expressions of very limited exceptions to the doctrine of sovereign immunity:
Subsections (a) and (b) of section 106 meet this "unequivocal expression" requirement with respect to monetary liability ... [T]hey plainly waive sovereign immunity with regard to monetary relief in two settings: compulsory counterclaims to governmental claims, 11 U.S.C. § 106(a); permissive counterclaims to governmental claims capped by a setoff limitation, 11 U.S.C. § 106(b).[6] *421 U.S. v. Nordic Village, Inc., ___ U.S. ___, ___, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992). See also In re Solis, 137 B.R. 121 (Bankr.S.D.N.Y.1992); Taborski v. U.S., 141 B.R. 959, 964 (N.D.Ill.1992); Taylor v. United States (In re Taylor), Ch. 13 Case No. 89-11583, Adv. No. 90-1036, slip op. at 3. (Bankr.S.D.Ga. Sept. 24, 1990) (Dalis, B.J.). Both subsections require that the government have a claim against the estate as a prerequisite to their application, although only subsection (b) expressly requires that the governmental unit have an "allowed claim" in the debtor's case. The key difference between the two provisions, however, is that subsection (a) waives immunity with regard to an affirmative recovery of damages where the debtor's claim and the government's claim arise out of the same transaction, while subsection (b) permits a narrower recovery (limited to the value of any claim the government has against the estate) in a greater number of circumstances because the claims do not have to be transactionally related. In re Solis, 137 B.R. 121, 125 (Bankr. S.D.N.Y.1992); U.S. v. McPeck, 910 F.2d 509, 512-13 (8th Cir.1990).
Because the Service has two allowed claims in Debtor's case, there is no question that the United States' has waived its immunity with regard to any damages which Debtor might offset against those claims under subsection (b). Debtor, however, is seeking an affirmative recovery of damages from the IRS. As a result, the requirements of section 106(a) must be satisfied before the IRS can be deemed to have waived its sovereign immunity with regard to such a recovery. In applying section 106(a), this court has previously held that sovereign immunity is waived for affirmative recovery against governmental unit only when all of the following conditions are met:
(1) the estate has a claim against the governmental unit and the governmental unit has a claim against the estate;
(2) the claim against the governmental unit is property of the estate; and
(3) the claims of both the estate and the governmental unit must arise out of the same transaction or occurrence.
See McDougald v. Internal Revenue Service (Matter of McDougald), Adv. No. 90-4177, slip op. at 12 (Bankr.S.D.Ga. April 24, 1991); Matter of Cowart, 128 B.R. 492, 497 (Bankr. S.D.Ga.1990). See also Taylor v. United States (In re Taylor), Ch. 13 Case No. 89-11583, Adv. No. 90-1036, 1990 WL 424983, (Bankr.S.D.Ga. Sept. 21, 1990) (Dalis, B.J.) aff'd, CV191-093, 1991 WL 537024 (S.D.Ga. Sept. 5, 1991), reaff'd, 148 B.R. 361 (S.D.Ga. 1992); In re Solis, 137 B.R. 121 (Bankr. S.D.N.Y.1992) (citing Matter of Cowart, 128 B.R. at 497).
The first prong of the test simply requires that the estate have a claim against the governmental unit and that the governmental unit have a claim against the estate. Although there has been some disagreement among the courts as to whether the governmental unit must have filed a proof of claim against the estate, this court has previously concluded that the express language of section 106(a) makes clear that it merely requires that the governmental unit have a claim against the debtor's estate:
A "claim" means a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured. "The express language of § 106(a) says nothing about the necessity of the government unit filing a proof of *422 claim in order to trigger the waiver of sovereign immunity. By the clear terms of the statute, the waiver is triggered by the existence of the government's `claim', not the filing of the proof of claim."
McDougald, supra, at 8-9 (quoting Taylor, supra, at 5-6) (emphasis original, citations omitted). Cf. Matter of Cowart, 128 B.R. at 497 (no waiver of immunity under section 106(a) because IRS did not have a claim against debtor). Contra In re Nichols, 143 B.R. 104 (Bankr.S.D.Ohio 1992) (IRS must file proof of claim before Chapter 7 debtor could have affirmative recovery of damages for IRS' alleged intentional violation of the automatic stay). Under either view, this prong is satisfied in this case because the IRS filed a proof of claim in Debtor's case, and Debtor has a claim against the United States based upon the IRS' willful violation of the stay.
As to the second prong, this court has previously determined that a debtor's claim for damages under section 362(h) is property of the estate under 11 U.S.C. Sections 541(a)(1) and 1306(a)(1). McDougald, supra, at 9-10. Most courts are in agreement. See e.g., United States v. McPeck, 910 F.2d 509, 512-13 (8th Cir.1990) (where IRS violated stay by continuing its tax collection efforts after debtor filed a Chapter 13 case, debtor's § 362(h) claim for damages (including attorney's fees) against the IRS belongs to debtor's estate): In re Solis, 137 B.R. at 126 ("Debtor's claim [against the IRS under § 362(h)] is property of the estate by operation of §§ 541 and 1306"). Therefore, any damages that Debtor successfully proves that she suffered as a result of the IRS' willful violation of the stay are property of the estate.
As to the third prong of the test, a determination of whether the claims arise out of the same transaction or occurrence requires the court to employ the same analysis that it would use in determining whether a claim is a "compulsory counterclaim" under Rule 13 of the Federal Rules of Civil Procedure. See McDougald, supra, at 10; Taylor, supra, at 6. Rule 13 defines a compulsory counterclaim as a claim which "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed.R.Civ.P. 13(a). In applying Rule 13, the "logical relationship" test is the appropriate standard within the Eleventh Circuit. Taylor, supra, at 7 (citing U.S. v. Aronson, 617 F.2d 119, 121 (5th Cir.1980)[7]). In applying the "logical relationship" test to section 106(a) of the Bankruptcy Code, this court has formerly adopted Ninth Circuit Bankruptcy Appellate Panel's analysis of this issue in In re Bulson, 117 B.R. 537, 541 (9th Cir. BAP 1990) aff'd 974 F.2d 1341 (9th Cir.1992), as follows:
The basic approach under the ["logical relationship"] test is to analyze whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all issues should be resolved in one lawsuit. A logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant.
In this case, the IRS's claim against the debtor arises from the debtor's failure to pay taxes owed. The debtor's claim arises pursuant to the attempt by the IRS to collect these taxes owed by the debtor. The basis of both cases revolve around the aggregate core of facts regarding the debtor's unpaid taxes. Therefore, ... under these circumstances the essential facts related to the tax claim itself are logically related to the government's collection activities.
McDougald, supra, at 10-12 (quoting Bulson, 117 B.R. at 541.).[8]
*423 The instant case presents the identical situation to that which the Court faced in Bulson. The IRS' claim against Debtor arises from Debtor's failure to pay certain tax obligations, while the Debtor's claim against the IRS arises out of the IRS' post-petition activity in attempting to collect on those tax obligations. Thus, both claims have their origin in the same aggregate core of facts; Debtor's failure to pay her tax obligation. Therefore, the facts which gave rise to the IRS' claim against Debtor (i.e., Debtor's failure to pay certain tax obligations), are "logically related" to the facts which form the basis of Debtor's claim under section 362(h) (i.e., IRS' post-petition collection activities on these tax obligations).
Accordingly, I find that all three of the necessary conditions for a waiver of sovereign immunity under section 106(a) have been satisfied. The United States is, therefore, deemed to have waived sovereign immunity with respect to the debtor's claim for damages under section 362(h).[9] This conclusion does not, however, completely resolve this issue because the United States raises sovereign immunity as a separate and distinct defense to Debtor's claim for punitive damages. The United States, relying upon a line of cases originating with the Supreme Court's decision in Missouri Pacific R. Co. v. Ault, 256 U.S. 554, 41 S.Ct. 593, 65 L.Ed. 1087 (1921), asserts that any waiver of immunity, under sections 106(a) or 106(b) of the Code does not encompass a waiver of immunity with regard to an award of punitive damages. Thus, an examination of Ault and its progeny is in order.
In Ault, the President of the United States had taken possession and control of the Missouri Pacific Railroad during World War I pursuant to the Federal Control Act of 1918. The railroad was operated through the Director General of Railroads under the Act. Ault was a discharged employee who brought an action against the railroad for failing to *424 remit his final wages within the time limits imposed by an Arkansas statute. The statute imposed a penalty for failure to comply with the time limits set therein. Judgment was awarded jointly against the Director General and the railroad company in the amount of $50.00 in actual wages and $390.00 as a penalty. The award was affirmed by the Supreme Court of Arkansas, and the Director General appealed to the United States Supreme Court.
Section 10 of the Federal Control Act provided that carriers operated by the Director General "shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law," while Section 15 of the Act provided in part that the "lawful police regulations of the several states shall continue unimpaired." Ault, 256 U.S. at 563, 41 S.Ct. at 597. Based upon these provisions of the Act, the Director General argued on appeal to the Supreme Court that his office enjoyed immunity as to the penalty imposed under the Arkansas statute. The Court agreed with the Director General, concluding that Congress did not, in enacting Section 10 and 15 of the Federal Control Act, intend to waive the United States' sovereign immunity with respect to penalties:
By these provisions the United States submitted itself to the various laws, state and federal, which prescribed how the duty of a common carrier by railroad should be performed and what should be the remedy for failure to perform ... But there is nothing either in the purpose or the letter of these clauses to indicate that Congress intended to authorize suit against the government for a penalty, if it should fail to perform the legal obligations imposed. The government undertook as carrier to observe all existing laws; it undertook to compensate any person injured through a departure by its agents or servants from their duty under such law; but it did not undertake to punish itself for any departure by the imposition upon itself of fines and penalties or to permit any other sovereignty to punish it.
Id. 256 U.S. at 563, 41 S.Ct. at 597. In reaching this conclusion, however, the Court was simply enforcing the limitations expressly reserved by the General Orders which had been issued under the Act, one of which expressly excluded "fines, penalties, or forfeitures" from the list of actions which could be brought directly against the Director General. Id. 256 U.S. at 564-65, n. 5, 41 S.Ct. at 597, n. 5.
Courts have since applied Ault expansively in construing the waiver of immunity effected under a "sue and be sued" clause of a federal agency or instrumentality. See e.g., Smith v. Russellville Production Credit Ass'n, 777 F.2d 1544, 1549 (11th Cir.1985) (finding the "established rule" to be that "punitive damages cannot be recovered from the United States or its agencies."); Painter v. Tennessee Valley Authority, 476 F.2d 943, 944 (5th Cir.1973) (Congress, in enacting provision allowing TVA to sue and be sued in tort or contract, did not waive sovereign immunity with respect to punitive damages); Commerce Federal Sav. Bank v. Federal Deposit Ins. Co., 872 F.2d 1240, 1246 (6th Cir.1989) (absent express waiver of immunity to such damages, F.D.I.C. is immune from the imposition of punitive damages against it); Matter of Sparkman, 703 F.2d 1097 (9th Cir.1983) (Production Credit Association, a federally chartered but privately owned corporation, cannot, under its "sue and be sued" clause, be held liable for punitive damages); In re Three Mile Island Litigation, 605 F.Supp. 778, 784 (M.D.Penn.1985) ("[T]he United States, its agencies and instrumentalities may not be held liable for punitive damages without the express consent of Congress.").
Two related principles emerge from Ault and its progeny. The first is that "the United States, its agencies, and instrumentalities cannot be held liable for punitive damages unless there is express statutory authority for such damages."[10] The second principle is that the typical "sue and be sued" clause within a federal agency's enabling legislation *425 is not express enough to waive an agency's immunity to punitive damages. The waiver of immunity in this case, however, is found in the Bankruptcy Code rather than any sort of generic "sue and be sued" provision, and the former Fifth Circuit clearly recognized that Congress could otherwise waive a federal agency's immunity from punitive damage awards. Painter v. Tennessee Valley Authority, 476 F.2d at 945, n. 5. The question in this case, then, is whether sections 106(a) and 106(b) provide the court with the "express statutory authority" to award punitive damages against the United States.
Two basic canons of statutory construction must guide the inquiry into whether sections 106(a) and 106(b) waive sovereign immunity with respect to punitive damages. The first is that, in construing any statute, it is the duty of the court "to give effect to the intent of Congress, and in doing so [the court's] first reference is ... to the literal meaning of words employed." Flora v. U.S., 357 U.S. 63, 65, 78 S.Ct. 1079, 1081, 2 L.Ed.2d 1165 (1958).[11] The second principle, as previously set forth, is that any waiver of sovereign immunity "must be construed strictly in favor of the sovereign, and not enlarged beyond what the language requires." U.S. v. Nordic Village, Inc., ___ U.S. at ___, 112 S.Ct. at 1015 (quoting Ruckelshaus v. Sierra Club, 463 U.S. 680, 685, 103 S.Ct. 3274, 3278, 77 L.Ed.2d 938 (1983)).
As previously noted, sections 106(a) and 106(b) unequivocally waive sovereign immunity with respect to an award of monetary damages in two very limited situations: (1) When a debtor has a compulsory counterclaim to a governmental unit's claim; and (2) When a debtor has a permissive counterclaim against a governmental unit, with recovery being limited to the amount of the governmental unit's allowed claim against the estate. See Nordic Village, ___ U.S. at ___, 112 S.Ct. at 1015. Once the conditions of sections 106(a) or 106(b) are satisfied, however, the language of both provisions is expansive in specifying the kinds of monetary damages for which immunity is waived. Section 106(a) provides that sovereign immunity is deemed waived "with respect to any claim"[12] that satisfies the three conditions set out above,[13] while section 106(b) provides for the "offset against an allowed claim or interest of a governmental unit any claim ... that is property of the estate."[14] Although the term "any" is not defined in the Bankruptcy Code, Black's Law Dictionary defines it, in part, as:
Some; one out of many; an indefinite number. One indiscriminately of whatever kind or quantity ... It is often synonymous with "either", "every", or "all".
Black's Law Dictionary 86 (5th ed. 1979). Thus, even when strictly construed in favor of the United States, use of the word "any" as the sole modifier of or limitation upon the term "claim" evinces an intent on the part of Congress to extend the waiver of immunity in sections 106(a) and 106(b) to all monetary claims, including those based upon punitive damages under section 362(h).
Although there is very little case law on this precise issue, what little there is supports this conclusion. The Court of Appeals for the Fourth Circuit has made the following observations about the waiver effected by section 106 of the Code:
We see nothing inconsistent in concluding that, by the assertion of its claim against the [bankruptcy] estate, the FDIC waived the protections it otherwise enjoys, both under the doctrine of sovereign immunity and under the Tort Claims Act.... "[T]he Bankruptcy Code's explicit waivers of sovereign immunity are entirely distinct, separate and independent from and in addition to those found in the FTCA." *426 Anderson v. Federal Deposit Ins. Corp., 918 F.2d 1139, 1144 (4th Cir.1990) (quoting in part In re Inslaw, Inc., 76 B.R. 224, 234 (Bankr.D.D.C.1987)). Another court has described the waiver of immunity under section 106(a) as being "complete", so that "the entire bankruptcy code applies including those provisions such as § 362(h) which provide for monetary damages." U.S. v. INSLAW, Inc., 113 B.R. 802, 813 (D.D.C.1989), rev'd on other grounds, 932 F.2d 1467 (D.C.Cir.1991). Only one court has expressly considered the issue of whether section 106 is effective in waiving the United States' immunity with regard to punitive damages, and it reached the following conclusion:
[T]he plain language of sections 106(a), (b), and (c) indicates that FmHA has waived sovereign immunity. Accordingly, an award of punitive damages would be awardable if there existed "appropriate circumstances."
U.S. By and Through Farmers Home Admin. v. Ketelsen, 104 B.R. 242, 253 (D.S.D. 1988), aff'd In re Ketelsen, 880 F.2d 990 (8th Cir.1989). Finally, a number of courts, based upon a waiver of immunity under sections 106(a) and 106(b), have awarded punitive damages against the IRS under section 362(h). See In re Lile, 161 B.R. 788, 792 (S.D.Tex.1993) (affirming award of punitive damages against IRS); In re Gault, 136 B.R. 736, 739 (Bankr.E.D.Tenn.1991) (awarding punitive damages against IRS); In re Nichols, 1991 WL 539972, slip op. at 3 (Bankr. E.D.Mo. Feb. 22, 1991) (awarding punitive damages against IRS); In re Davis, 131 B.R. 50 (Bankr.E.D.Va. 1991) (awarding punitive damages against IRS), rev'd on other grounds, Davis v. IRS, 136 B.R. 414 (E.D.Va. 1992) (concluding circumstances surrounding IRS' violation of stay did not warrant punitive damages).
In Lile, the district court for the Southern District of Texas affirmed the bankruptcy court's[15] award of $100,000.00 in punitive damages against the IRS under section 362(h) for its willful violation of the stay in attempting to seize a Chapter 11 debtor's leasehold premises and other personal property. In re Lile, 161 B.R. at 792. In affirming the decision, the District Court concluded that punitive damages were appropriately awarded against the United States, reasoning as follows:
The court has concluded that 11 U.S.C. § 106(a) waives the government's sovereign immunity. 11 U.S.C. § 362(h) states that punitive damages may be recovered in appropriate circumstances. The IRS cites no case specifically holding that punitive damages cannot be recovered for a § 362(h) violation. A number of courts have held that punitive damages may be recovered against the IRS.
Id. (citations omitted).
Similarly, the IRS has not cited, and this court has not located, a single decision in which a court, after finding a waiver of immunity under sections 106(a) or 106(b), refuses to award punitive damages against the United States based upon sovereign immunity. Thus, in view of the broad language employed by Congress in defining the kinds of claims to which sovereign immunity is waived, as well as the relevant case law construing these provisions, I conclude that sections 106(a) and 106(b) of the Bankruptcy Code are effective in waiving the IRS' sovereign immunity with respect to punitive damages awarded pursuant to section 362(h) of the Code. Having already determined that the requirements of section 106(a) have been satisfied in this case, the IRS is deemed to have waived its immunity with respect to any damages which Debtor satisfactorily proves.
3. Damages
As previously set forth, section 362(h) of the Bankruptcy Code provides that an individual debtor injured by a willful violation of the stay "shall recover actual damages, including costs and attorney's fees, and in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h) (emphasis added). Thus, the language of section 362(h) suggests that "an award of actual damages is mandatory upon a finding of a willful violation, but an award of punitive damages is discretionary and proper only in appropriate circumstances." Davis v. IRS, *427 136 B.R. 414, 423 n. 20 (E.D.Va.1992).[16] The mandatory tone of section 362(h) does not, however, diminish a debtor's obligation to sufficiently prove his or her actual damages. "A damage award [under 362(h)] must not be based on `mere speculation, guess, or conjecture'." In re Gault, 136 B.R. 736, 739 (Bankr.E.D.Tenn.1991) (quoting John E. Green Plumbing & Heating Co. v. Turner Const. Co., 742 F.2d 965, 968 (6th Cir.1984), cert. denied, 471 U.S. 1102, 105 S.Ct. 2328, 85 L.Ed.2d 845 (1985)).[17]
Debtor claims to have suffered, as a direct result of the Service's post-petition levy, actual damages in the form of lost wages, mental anguish, and attorney's fees. Debtor also seeks an award of punitive damages.
Debtor offered proof that she had incurred lost wages in the amount of $350.00 when she was forced to miss work in meeting with her attorney, attending a deposition, and attending hearings before this Court. The Service did not offer any evidence to the contrary. Accordingly, I find that Debtor has sufficiently proven damages in this amount.
Debtor's entitlement to damages stemming from her mental anguish, on the other hand, is a more difficult question. Debtor was never deprived of any of her wages as a result of the levy. She testified that she was embarrassed when she was informed of the levy, but, in the absence of further proof, I find any mental anguish caused by this event to be fleeting and inconsequential. Accordingly, Debtor is not entitled to any compensation for her emotional distress or mental pain and suffering.
As to Debtor's claim for attorney's fees, Debtor's counsel submitted a detailed fee application indicating that he had spent a total of 28.52 hours on this matter at the professional rate of $100.00 per hour, thus yielding a total fee of $2,852.00. The IRS asserts that Debtor is not entitled to attorney's fees because she and her attorney did not seek to resolve the dispute in a nonlitigious manner. I disagree. Although a number of courts have determined that an award of attorney's fees is not warranted where a debtor and his or her counsel have not attempted to resolve a stay violation before initiating litigation,[18] Debtor and her counsel were well within their rights in bringing the instant action against the Service. Debtor and her attorney believed that she was entitled to significant compensatory damages, particularly for Debtor's mental anguish, as well as punitive damages. The Service has not put before this court any evidence that it was willing to compensate Debtor for any of these injuries. Thus, the amount of the fee, $2,852.00, appearing in all respects to be reasonable, is appropriately awarded to Debtor in compensation for her attorney's fees.[19]
Finally, as to punitive damages, a number of courts have adopted the standard set forth by the court in In re Wagner, 74 B.R. 898 (Bankr.E.D.Pa.1987), for determining when "appropriate circumstances" exist for an award of such damages under section 362(h):
Punitive damages are awarded in response to particularly egregious conduct for both punitive and deterrent purposes. Such awards are reserved for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief. *428 To recover punitive damages, the defendant must have acted with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so.
Id. at 903 (quoting in part Cochetti v. Desmond, 572 F.2d 102, 106 (3rd Cir.1978) (a case decided under 42 U.S.C. § 1983)).[20] The Second Circuit Court of Appeals noted that an award of punitive damages under section 362(h) requires "[a]n additional finding of maliciousness or bad faith on the part of the offending creditor ...",[21] while another line of cases has concluded that punitive damages are appropriate "where an arrogant defiance of the federal law is demonstrated."[22]
Under any of these standards, the circumstances of this case warrant the imposition of punitive damages against the IRS. As noted elsewhere in this order, the IRS maintains that it is incapable or unwilling to develop a system of cross-referencing its files to prevent actions such as the ones in this case from occurring. It offers no hope that any system is contemplated or will be instituted in the future. It has been sued on numerous occasions in this District for actions essentially identical to those committed in this case.[23] Doubtless, this is not the only judicial district in which it has so acted. It comes before the Court showing no remorse, apparently believing that it is not subject to the same requirements that other creditors in a bankruptcy proceeding are subject to. The IRS is a federal agency charged with the responsibility of enforcing the federal tax code, and it, of all the litigants in bankruptcy, should be the most attuned to its responsibilities to debtors who have sought the protective shield of 11 U.S.C. Section 362. Its failure to correct known, glaring weaknesses in its internal controls which cause it to repeatedly violate the automatic stay constitutes bad faith and an arrogant defiance of the majesty of Federal Law which has embodied 11 U.S.C. Section 362 as its "fundamental protection" to debtors in bankruptcy.
As to the appropriate amount, "[a]n award of punitive damages should be gauged by the gravity of the offense and set at a level sufficient to insure that it will punish and deter." In re Aponte, 82 B.R. 738 (Bankr.E.D.Pa.1988) (quoting in part Mercer v. DEF, Inc., 48 B.R. 562, 565 (Bankr. D.Minn.1985)). The IRS' recalcitrance and indifference to the fact that its current system guarantees that it will repeatedly violate the automatic stay persuade me that an award of $10,000.00 in punitive damages is appropriate in this case.
In sum, I conclude that Debtor is entitled to $350.00 in lost wages, $2,852.00 in attorney's fees, and $10,000.00 in punitive damages. However, because the IRS has two allowed claims in Debtor's Chapter 13 case, Debtor's recovery must, under the mandatory language of section 106(b) of the Code, be offset against the IRS' remaining allowed claims in Debtor's case.[24] The remaining sum is to be paid directly to the Chapter 13 Trustee pending further order of the Court.
NOTES
[1] 11 U.S.C. § 362, entitled "Automatic stay", in relevant part provides:

(a) Except as provided in subsection (b) of the section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of  ...
(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
...
(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title
[2] H.R.Rep. No. 595, 95th Cong., 1st Sess. 340-342 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News, pp. 5787, 6296-6298.
[3] See also In re Atlantic Business and Community Corp., 901 F.2d 325, 329 (3rd Cir.1990); In re Bloom, 875 F.2d 224, 227 (9th Cir.1989); In re Solis, 137 B.R. 121, 132 (Bankr.S.D.N.Y.1992); In re Gault, 136 B.R. 736, 738 (Bankr.E.D.Tenn. 1991).
[4] See e.g., 26 C.F.R. § 601.101, at 5; Castleberry v. Alcohol, Tobacco and Firearms Div., 530 F.2d 672, 673 n. 3 (5th Cir.1976); Deleeuw v. I.R.S., 681 F.Supp. 402 (E.D.Mich.1987); Krouse v. United States, 380 F.Supp. 219 (C.D.Cal.1974); In re Perry, 90 B.R. 565 (Bankr.S.D.Fla.1988).
[5] See e.g., Bornholdt v. Brady, 869 F.2d 57, 69 (2nd Cir.1989); McDougald v. I.R.S. (Matter of McDougald), Adv. No. 90-4177, Ch. 13 Case No. 89-40326, 1991 WL 635259, slip op. at 5 (Bankr. S.D.Ga. April 24, 1991) (Davis, B.J.).
[6] Subsection (c), on the other hand, has been labeled by the Supreme Court as being susceptible to more than one interpretation. U.S. v. Nordic Village, Inc., ___ U.S. at ___, 112 S.Ct. at 1015. For that reason, the Court has held that subsection (c) does not contain the unambiguous and unequivocal language required to waive sovereign immunity with respect to claims for monetary relief against either a state government or the federal government. Hoffman v. Connecticut Dept. of Income Maintenance, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989) (plurality opinion holding that states's immunity not waived with respect to monetary damages under section 106(c) and the 11th Amendment); U.S. v. Nordic Village, Inc., ___ U.S. at ___, 112 S.Ct. at 1015 (1992) (majority opinion holding that federal government's immunity not waived with respect to monetary damages under section 106(c)). Subsection (c) is not, however, completely ineffective as a waiver of sovereign immunity. Under the Supreme Court's construction of subsection (c), a state or federal governmental unit "that files no proof of claim would be bound, like other creditors, by discharge of debts in bankruptcy, including unpaid taxes, but would not be subjected to monetary recovery." Hoffman v. Connecticut Dept. of Income Maintenance, 492 U.S. at 102, 109 S.Ct. at 2822-23, 106 L.Ed.2d at 84-85. (plurality opinion). Thus, governmental units are still completely subject to the avoiding power of 11 U.S.C. Section 362(a), but are not liable for damages under section 362(h) until and unless the unit has a claim under Section 106(a), or files a proof of claim under Section 106(b). See In re Pearson, 917 F.2d 1215, 1215-16 (9th Cir.1990), cert. denied, ___ U.S. ___, 112 S.Ct. 1291, 117 L.Ed.2d 514 (1992); U.S. v. McPeck, 910 F.2d 509, 511 (8th Cir.1990).
[7] Decisions of the United States Court of Appeals for the Fifth Circuit, which were decided prior to September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206 (11th Cir.1981).
[8] Accord In re Pinkstaff, 974 F.2d 113, (9th Cir. 1992) (reaffirming the approach taken in Bulson); In re Boldman, 157 B.R. 412 (C.D.Ill.1993) (concluding that debtor's claim for attorney's fees against the IRS under section 362(h) arose out of same transaction or occurrence from which IRS' claim for pre-petition taxes arose); In re Solis, 137 B.R. at 127 (Bankr.S.D.N.Y.1992) ("We are not inclined to disregard the weight of reasoned authority without reason ... and therefore find that both [the IRS claim for past due taxes and debtor's claim for damages under § 362(h)] arose out of same transaction."); In re Price, 130 B.R. 259, 270 (N.D.Ill.1991) (IRS' erroneous levy and the resulting claim for attorney's fees by debtor would not have occurred had there not been unpaid taxes which IRS was trying to collect, and, therefore, interpretation which treats the two claims as arising from distinct events turns a blind eye to reality); Taborski v. U.S., 141 B.R. 959 (N.D.Ill.1992) (debtor's claim against IRS and IRS' claim against debtor arose out of same transaction and occurrence, which was IRS' attempt to collect the taxes); In re Lile, 103 B.R. 830, 835 (Bankr.S.D.Tex.1989) aff'd 161 B.R. 788 (S.D.Tex.1993) (IRS claim for unpaid taxes and debtor's claim for damages for post-petition levy arose out of same transaction or occurrence). Contra In re Rebel Coal Co., Inc., 944 F.2d 320 (6th Cir.1991) (concluding that claim for attorneys' fees did not arise out of same transactions as a tax collection claim); In re Academy Answering Service, Inc., 100 B.R. 327, 330 (N.D.Ohio 1989) (holding that IRS claim for taxes and claim of debtor against IRS for violation of automatic stay did not arise out of the same transaction or occurrence).
[9] Accord In re Boldman, 157 B.R. 412 (C.D.Ill. 1993) (concluding that IRS waived its sovereign immunity under § 106(a) with respect to attorney's fees sought by debtor under § 362(h) for IRS' issuance of a Notice of Intent to Levy in violation of the automatic stay); In re Solis, 137 B.R. 121 (Bankr.S.D.N.Y.1992) (section 106(a) waives sovereign immunity and opens the door to an award of damages against the IRS for willful violations of the automatic stay where IRS levied on debtor's bank account post-petition for tax liabilities arising pre-petition); In re Price, 130 B.R. 259, 270 (N.D.Ill.1991) (IRS, by filing proof of claim in Chapter 13 proceeding, was deemed to have waived its sovereign immunity under section 106(a) with respect to that claim and thus could be held liable for willful violation of stay arising out of its post-petition collection attempt, even though debtors' claim for damages arose after confirmation of their Chapter 13 plan); Taborski v. U.S., 141 B.R. 959 (N.D.Ill. 1992) (IRS waived sovereign immunity under section 106(a) with respect to Chapter 13 debtor's claim for costs and attorney fees that was proximately linked to actions which IRS took to recover back taxes, where IRS had filed proof of claim in the case); In re Bulson, 117 B.R. 537 (9th Cir. BAP1990) aff'd 974 F.2d 1341 (9th Cir.1992) (IRS' sovereign immunity from damages for willful violation of automatic stay in Chapter 13 case was waived under section 106(a) where essential facts relating to tax claim for pre-petition liability were logically related to IRS' post-petition collection activities); In re Lile, 103 B.R. 830, 835 (Bankr.S.D.Tex.1989) aff'd 161 B.R. 788 (S.D.Tex.1993) (IRS can be held liable for punitive damages under section 106(a) where same operative facts serve as the basis for IRS' claim for pre-petition taxes as well as debtor's claim for violation of the automatic stay).
[10] Matter of Sparkman, 703 F.2d at 1097 (citing Missouri Pacific R.R., Co. v. Ault, 256 U.S. 554, 41 S.Ct. 593, 65 L.Ed. 1087 (1921)).
[11] See also Pennsylvania Dept. of Public Welfare v. Davenport, 495 U.S. 552, 557, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990) ("Our construction ... is guided by the fundamental canon that statutory interpretation begins with the language of the statute itself."); U.S. v. Ron Pair Enter., Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) ("The sole function of the court is to enforce [a statute] according to its terms.").
[12] 11 U.S.C. §§ 106(a) (emphasis added).
[13] See Section I, supra p. 10.
[14] 11 U.S.C. § 106(b) (emphasis added).
[15] See In re Lile, 103 B.R. 830 (Bankr.S.D.Tex. 1989).
[16] See also Matter of Mullarkey, 81 B.R. 280, 284 (Bankr.D.N.J.1987).
[17] See also Archer v. Macomb County Bank, 853 F.2d 497, 500 (6th Cir.1988) (reversing bankruptcy court because evidence of lost contracts due to violation of stay was too speculative); Lovett v. Honeywell, Inc., 930 F.2d 625, 629 (8th Cir.1991) ("We are ... satisfied that there is insufficient evidence in the record to support an award of actual damages ..."); In re Alberto, 119 B.R. 985, 995 (Bankr.N.D.Ill.1990) ("Once a party has proven that he has been damaged, he needs to show the amount of damages with reasonable certainty.").
[18] See In re Houchens, 85 B.R. 152, 155 (Bankr. N.D.Fla.1988); In re McLaughlin, 96 B.R. 554, 560-61 (Bankr.E.D.Pa.1989); In re Still, 117 B.R. 251, 254 (Bankr.E.D.Tex.1990).
[19] See e.g., In re Lile, 161 B.R. 788, 794 (S.D.Tex. 1993); In re Price, 143 B.R. 190, 193 (Bankr. N.D.Ill.1992); Taborski v. United States, 141 B.R. 959, 967 (N.D.Ill.1992); In re Joslyn, 75 B.R. 590, 593 (Bankr.D.N.H.1987).
[20] The following courts have adopted the Wagner standard in assessing the propriety of an award of punitive damages against a creditor under section 362(h). In re Gault, 136 B.R. at 739; In re Solis, 137 B.R. 121, 133 (Bankr.S.D.N.Y. 1992); In re Lile, 103 B.R. 830, 841 (Bankr. S.D.Tex. 1989), aff'd 161 B.R. 788 (S.D.Tex. 1993); In re Falls Building, Ltd., 94 B.R. 471, 482 (Bankr.E.D.Tenn.1988).
[21] In re Chateaugay Corp., 920 F.2d 183, 186 n. 1 (2nd Cir.1990) (quoting In re Crysen/Montenay Energy Co., 902 F.2d 1098, 1105 (2nd Cir.1990)).
[22] Matter of Mullarkey, 81 B.R. 280, 284 (Bankr. D.N.J.1987) (quoting In re Tel-A-Communications Consultants, Inc., 50 B.R. 250, 255 (Bankr. D.Conn.1985)).
[23] A cursory review of the Court's docket reveals that at least a dozen such cases have been filed in the past two years in this District alone. Approximately 20 additional cases seeking turnover of refunds held in violation of Section 362, but not seeking damages, have likewise been filed since 1992.
[24] See e.g., U.S. v. McPeck, 910 F.2d 509, 512-13 (8th Cir.1990).